*In re* HÉCTOR COLLAZO MALDONADO y NELSON RIVERA CABRERA.

*Número:* CP-1998-9          *Resuelto:* 3 de abril de 2003

*Carlos Lugo Fiol*, procurador general, *Gustavo A. Gelpí*, procurador general, e *Yvonne Casanova Pelosi*, procuradora general auxliar; *Enrique Rivera Santana*, comisionado especial; *Héctor M. Collazo, pro se; Nelson Rivera Cabrera, pro se.*

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

"[Q]uien es negligente no ejerce, sino sólo simula ejercer el derecho."[1]

La Honorable Georgina Candal, jueza del Tribunal de Primera Instancia de la Sala Superior de Bayamón, elevó ante este Tribunal una "minuta" en la cual se hacía un resumen de la conducta profesional observada por los Lcdos. Héctor Collazo Maldonado y Nelson Rivera Cabrera, abogados que representaban a la parte demandante en un pleito de daños y perjuicios, por impericia médica, que se estaba tramitando ante el mencionado tribunal de instancia. Examinada la referida "minuta", el Tribunal estimó procedente referir el asunto, para la correspondiente investigación e informe, a la Oficina del Procurador General de Puerto Rico.

El Procurador General (Procurador) rindió un detallado y comprensivo informe. Del informe surge, en lo pertinente, que los referidos abogados mal informaron o hicieron falsas representaciones al tribunal de instancia e incumplieron con su responsabilidad profesional, de manera reiterada, al no informar, con honestidad, al referido tribunal sobre la verdadera situación respecto a la prueba pericial con que contaban y al no contestar interrogatorios que le fueron sometidos por la parte contraria, conducta que causó que el foro primario le impusiera sanciones económicas montantes a $1,100 a dichos abogados y que, al éstas no ser satisfechas, puso en peligro de desestimación la causa de acción de sus representados.

---

[1] *Colón Prieto v. Géigel*, 115 D.P.R. 232, 240 (1984), citando a J.B. Iturraspe, *Función social de la abogacía*, 2da ed., Argentina, Ed. Castellví, 1967, pág. 44.

*En su Informe, el Procurador calificó la referida conducta como* "un clásico ejemplo de desidia, despreocupación, crasa negligencia e irresponsabilidad profesional".[2] *En resumen*, concluyó que dicha conducta resultaba *claramente violatoria* de las disposiciones de los Cánones 12, 18, 35 y 38 del Código de Ética Profesional.

En vista de dicho Informe, mediante Resolución a esos efectos, instruimos al Procurador para que procediera a presentar las correspondientes querellas contra los abogados Collazo Maldonado y Rivera Cabrera. Presentadas las querellas, el licenciado Collazo Maldonado contestó, mas *no así* el licenciado Rivera Cabrera.[3] Designamos al ex Juez Superior, Lcdo. Enrique Rivera Santana, como Comisionado Especial. El licenciado Rivera Santana rindió el correspondiente informe. Un examen del informe demuestra que las determinaciones de hecho que realizara el Comisionado Especial *confirman* lo expresado por el Procurador en el informe que dicho funcionario presentara ante este Tribunal.[4]

Examinado el informe rendido por el Comisionado Es-

---

[2] Informe del Procurador General, pág. 8.

[3] En vista a ello, resolvimos que se entendía negada la querella presentada en contra del licenciado Rivera Cabrera.

[4] De un *examen independiente* de los autos, claramente se desprende la conducta negligente e impropia de los abogados. Veamos.

En primer lugar, resalta el reiterado incumplimiento de los querellados a su deber de informarle al tribunal de instancia, y a la otra parte, sobre la prueba pericial que presentarían en corte. Esto conllevó que el referido tribunal emitiera órdenes, apercibiendo a la parte representada por estos abogados que no admitiría en evidencia el informe pericial. También les apercibió, en dos ocasiones, que de incumplir con la orden de presentar el referido informe decretaría la desestimación de la demanda.

Asimismo, los aquí querellados faltaron a su obligación de realizar las gestiones necesarias para que fueran contestados unos interrogatorios que le fueron sometidos por la parte adversa, lo cual puso en riesgo la causa de acción de los demandantes, sus representados. Ello considerando que el tribunal de instancia había emitido una orden apercibiéndoles de la posible desestimación de su demanda. También incumplieron con uno de los señalamientos hechos por el tribunal al no comparecer a la conferencia con antelación al juicio.

Por otro lado, resulta claro que, desde el comienzo del litigio, el querellado Rivera Cabrera conocía sobre la no disponibilidad del perito contratado. Sin embargo, pasaron casi tres años y nunca notificó de este hecho a las partes, al tribunal ni a los abogados de la parte adversa.

pecial, le concedimos a todas las partes —esto es, al Procurador y a los dos abogados querellados— un término simultáneo de treinta días para que "proced[ieran] oportunamente [a expresar] sus posiciones, y objeciones, si alguna, al referido Informe". Resolución de 5 de mayo de 2000. El Procurador prontamente compareció, expresando su conformidad con el mismo. Los abogados querellados *no* comparecieron. Partimos de la premisa que éstos *no* tienen objeción alguna al informe rendido por el Comisionado Especial. *Resolvemos.*

## I

En más de una ocasión hemos resuelto que un abogado que acepta un caso y luego no demuestra la competencia y diligencia que exige el ejercicio de la abogacía violenta las disposiciones del Código de Ética Profesional. *In re Laborde Freyre*, 149 D.P.R. 59 (1999). Todo abogado tiene la obligación de atender los intereses de sus clientes desplegando la mayor diligencia, celo y cuidado en los asuntos que se le han encomendado. Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Véanse, además: *In re Cardona Ubiñas*, 156 D.P.R. 340 (2002); *In re Ortiz Velázquez*, 145 D.P.R. 308 (1998); *In re Avilés Vega*, 141 D.P.R. 627 (1996); *In re Acosta Grubb*, 119 D.P.R. 595 (1987).

A esos efectos hemos reiterado que el deber de diligencia profesional es incompatible con la desidia, despreocupación, inacción y displicencia. *In re Padilla Pérez,*

---

Surge del expediente que el tribunal le impuso a los abogados varias sanciones económicas montantes a mil cien dólares por el *reiterado incumplimiento* de éstos para con las órdenes emitidas por dicho foro. Es de notar que para el año 1998, fecha en que el tribunal decidió elevar el expediente ante este Tribunal, dichas sanciones aún no habían sido satisfechas. *Como si esto fuera poco, los dos abogados involucrados no respondieron a la orden emitida por este Tribunal en la que le concedimos un término para que se expresaran en torno al informe emitido por el Comisionado Especial. Por su parte, Rivera Cabrera no contestó la querella disciplinaria y tampoco compareció a los procedimientos ante el Comisionado Especial.*

135 D.P.R. 770, 776 (1994); *In re Pérez Santiago*, 131 D.P.R. 676 (1992). Todo abogado puede asumir cualquier representación legal si se prepara adecuadamente y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia. Canon 18, ante. Su desempeño debe ser siempre adecuado, responsable, capaz y efectivo. *In re Román Rodríguez*, 152 D.P.R. 520 (2000).

Entre algunos de los muchos tipos de conducta que hemos sancionado y catalogado como violatorios de este importante deber de diligencia, se encuentran: *no comparecer a los señalamientos del tribunal;*[5] *no contestar interrogatorios que le son sometidos;*[6] *no informar a las partes sobre la presentación de un perito;*[7] *desatender o abandonar el caso;*[8] *permitir que expire el término prescriptivo o jurisdiccional de una acción;*[9] *cualquier tipo de actuación negligente que pueda conllevar o, en efecto, resulte en la desestimación o archivo del caso.*[10]

Indudablemente la conducta de los abogados en el presente caso contravino lo dispuesto en el Canon 18, ante, y la norma jurisprudencial expuesta anteriormente. Los abogados incumplieron *crasamente* con el deber de diligencia al no presentar el informe pericial; no informarle prontamente al tribunal y a las partes respecto a los problemas

[5] Véanse: *In re Marrero Figarella*, 146 D.P.R. 541 (1998); *In re Pagán Hernández*, 141 D.P.R. 113 (1996); *In re Pérez Santiago*, 131 D.P.R. 676 (1992); *Acevedo v. Compañía Telefónica de P.R.*, 102 D.P.R. 787 (1974); *In re Acosta Grubb*, 119 D.P.R. 595 (1987).

[6] Véanse: *In re Maduro Classen*, 142 D.P.R. 611 (1997); *In re Pérez Santiago*, ante; *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982).

[7] Véase *In re Marrero Figarella*, ante.

[8] Véanse: *In re Guadalupe, Colón*, 155 D.P.R. 135 (2001); *In re Laborde Freyre*, 149 D.P.R. 59 (1999); *In re Pérez Santiago*, ante; *In re Acosta Grubb*, ante; *In re Díaz Alonso, Jr.*, 115 D.P.R. 755 (1984); *In re Coll*, 101 D.P.R. 799 (1973).

[9] Véanse: *In re Padilla Pérez*, 135 D.P.R. 770 (1994); *In re Pérez Santiago*, ante; *In re Vélez Valentín*, 124 D.P.R. 403 (1989); *Pueblo v. Miranda Colón*, 115 D.P.R. 511, 512 (1984).

[10] Véanse: *In re Guadalupe, Colón*, ante; *In re Rosario*, 116 D.P.R. 462 (1985); *In re Laborde Freyre*, ante; *In re Padilla Pérez*, ante; *Dávila v. Hosp. San Miguel, Inc.*, 117 D.P.R. 807 (1986); *In re Acosta Grubb*, ante; *Maldonado v. Srio. de Rec. Naturales*, ante.

confrontados con el perito; no comparecer a los señalamientos del tribunal, y al no contestar los interrogatorios. El hecho de que tales actuaciones, en varias ocasiones, haya puesto a los demandantes en riesgo de ver su causa de acción desestimada, constituye el mejor ejemplo de la falta de diligencia exhibida por los aquí querellados.

■ De igual manera, la actuación de los querellados al no informarle a sus clientes sobre la no disponibilidad del perito, y los problemas confrontados con relación a éste, constituyó una grave falta en contravención a lo estatuido en el Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En éste se exige que el abogado mantenga siempre informado a su cliente de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Véanse, además: *In re Cardona Ubiñas*, ante; *In re Ortiz Velázquez*, ante; *In re Vélez Valentín*, 124 D.P.R. 403 (1989); *In re Arana Arana*, 112 D.P.R. 838 (1982).

■ Por otro lado, el no actuar con premura con relación a la presentación del informe de prueba pericial, unido al constante incumplimiento con las órdenes del tribunal de instancia y al hecho de no satisfacer las sanciones impuestas, tuvo el efecto de dilatar irrazonablemente el procedimiento judicial. Ello en contravención a lo preceptuado en el Canon 12 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, que dispone, en lo pertinente, que "[e]s deber del abogado ... ser puntual en su asistencia y conciso y exacto en el trámite y presentación de sus causas. Ello implica desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución". *In re Guadalupe, Colón*, 155 D.P.R. 135 (2001). Hemos expresado que esta obligación ha de cumplirla el abogado en todas las etapas de un litigio, y comprende el acatar fielmente las órdenes del tribunal. *In re Pagán Hernández*, 141 D.P.R. 113 (1996). Cónsono con lo anterior, hemos enfatizado que los abogados deben la más estricta observancia a las órdenes judiciales. *In re Ortiz Velázquez*,

ante, pág. 313; *In re Padilla Pérez*, ante, pág. 778; *Martínez Rivera v. Sears, Roebuck*, 98 D.P.R. 641 (1970). De otro modo pueden quedar sujetos a nuestro rigor disciplinario.

■ La *constante desobediencia* de los aquí querellados para con las órdenes del tribunal de instancia demuestra una grave infracción a los principios básicos de ética profesional que exigen el mayor respeto hacia los tribunales. El comportamiento de todo abogado "no debe ser otro que el fiel cumplimiento de la ley y el respeto al poder judicial". *In re Díaz Alonso, Jr.*, 115 D.P.R. 755, 762 (1984). Véase *Acevedo v. Compañía Telefónica de P.R.*, 102 D.P.R. 787, 791 (1974).

■ Por otra parte, el que dichos abogados, por espacio de aproximadamente dos años, *incurrieran en una falsa representación de hechos* ante el tribunal de instancia creando una expectativa de que contaban con un perito médico que estaba disponible para comparecer, cuando no era así, no puede menos que llevarnos a concluir que *tal deshonestidad* violentó el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Éste específicamente dispone que la conducta de todo abogado ante los tribunales debe ser sincera y honrada. "[N]o es sincero ni honrado el utilizar medios inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos ...". Íd. Véase *In re Pagán Hernández*, ante, pág. 119. Asimismo, dicha conducta infringe lo preceptuado en el Canon 38 a los efectos de que todo abogado debe conducirse de forma digna y honorable, aportando a la consecución de una mejor administración de la justicia. 4 L.P.R.A. Ap. IX, C. 38.

■ Por último, la dejadez y despreocupación de los querellados al no contestar las órdenes de este Tribunal, como tampoco la querella disciplinaria, por parte del licenciado Rivera Cabrera, constituye una *negativa incomprensible y contumaz* de un miembro del foro en cumplir con los

procedimientos establecidos por este Tribunal. En más de una ocasión hemos advertido que conducta de esa índole no será tolerada por esta Curia. *In re Nicot Santana*, 129 D.P.R. 717 (1992); *In re Pagán Rodríguez*, 122 D.P.R. 532 (1988); *In re Rosa Batista*, 122 D.P.R. 485 (1988).

## II

■ Es correcto que los tribunales de instancia poseen el poder inherente para vindicar la majestad de la ley y para hacer efectiva su jurisdicción, pronunciamientos y órdenes. *E.L.A. v. Asociación de Auditores*, 147 D.P.R. 669, 681 (1999); *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529, 535 (1989); *Sterzinger v. Ramírez*, 116 D.P.R. 762, 787 (1985). El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *Pueblo v. Vega, Jiménez*, 121 D.P.R. 282, 287 (1988). Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Ortiz Rivera v. Agostini*, 92 D.P.R. 187, 193–194 (1965).

■ En virtud de esos poderes, los tribunales de instancia tienen a su alcance múltiples mecanismos procesales para mantener y asegurar el orden en los procedimientos ante su consideración, para hacer cumplir sus órdenes y para realizar cualquier otro acto que resulte necesario para cumplir a cabalidad sus funciones. *E.L.A. v. Asociación de Auditores*, ante. Asimismo, tienen el poder de tomar medidas dirigidas a supervisar y controlar la conducta de los abogados que postulan ante sí. *Meléndez v. Caribbean Int'l News*, 151 D.P.R. 649 (2000); *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. 633, 637–638 (1988). Algunos de

estos mecanismos son: las multas y sanciones económicas,[11] el desacato civil y criminal,[12] la facultad para descalificar abogados,[13] y la facultad para ordenarle a un abogado que renuncie a la representación legal de su cliente,[14] entre otros.

De lo anterior se colige que, en efecto, los tribunales de instancia tienen a su haber suficientes métodos para controlar los procedimientos, poner en vigor sus órdenes e inclusive para supervisar y controlar la conducta de los abogados que ante ellos postulan; *ello sin que sea necesaria nuestra intervención.*

Es por ello que estamos de acuerdo en que los múltiples mecanismos procesales que tienen a su disposición los tribunales de instancia hacen innecesario que ejerzamos nuestra jurisdicción disciplinaria en todo caso en que se denuncie una *irregularidad menor* en torno a la conducta de un abogado. Del mismo modo, estamos contestes en que un caso que verse, *exclusivamente*, sobre la falta de pago de sanciones impuestas por el tribunal a un abogado es un ejemplo del tipo de situación en que los tribunales tienen la potestad de utilizar sus mecanismos procesales sin que sea necesario que este Tribunal ejerza sus prerrogativas disciplinarias.

---

[11] Véanse: Regla 5(c) para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, 4 L.P.R.A. Ap. II–A (ed. 1998); Reglas 37.3 y 44.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 85 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII–A; *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 D.P.R. 679 (1987); *Dávila v. Hosp. San Miguel, Inc.*, ante.

[12] 4 L.P.R.A. sec. 362b; Regla 40.9 de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 242(a) y (b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *In re Hon. Díaz García, T.P.I.*, 158 D.P.R. 549 (2003); *Pueblo v. Santiago Agricourt*, 147 D.P.R. 179 (1998); *Pueblo v. Lamberty González*, 112 D.P.R. 79 (1982); *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529 (1989); *Pueblo v. Vega, Jiménez*, 121 D.P.R. 282 (1988).

[13] Véanse: *Meléndez v. Caribbean Int'l News*, 151 D.P.R. 649 (2000); *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.*, 135 D.P.R. 303, 317 esc. 25 (1994); *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. 633 (1988). En este último caso claramente establecimos que el procedimiento de descalificación no constituye de por sí una acción disciplinaria, ya que la potestad de disciplinar a la clase togada recae exclusivamente sobre este Tribunal. Íd., pág. 638.

[14] Véase *In re Orlando Roura*, 119 D.P.R. 1 (1987).

*Ahora bien*, la conducta exhibida por los abogados en el caso de autos, en particular la del Lcdo. Nelson Rivera Cabrera, *traspasó los linderos que permiten limitar los mecanismos correctivos a los disponibles por los tribunales de instancia.* Éste *no* es un simple caso de falta de pago de sanciones, *sino uno en que la conducta de los abogados trascendió a un nivel que claramente requiere la intervención de este Tribunal.* Ello por razón de que la conducta observada *contraviene las normas y los principios básicos de ética que rigen la profesión jurídica.*

## III

En resumen, parece claro que el cúmulo de actuaciones llevadas a cabo por los querellados no estuvo a la altura de la responsabilidad ética que imponen los Cánones 12, 18, 19, 35 y 38 del Código de Ética Profesional, ante. En esta clase de situaciones, recae *exclusivamente* sobre este Tribunal, en virtud de nuestro poder constitucional e inherente para reglamentar la profesión jurídica, velar por el fiel cumplimiento de los postulados del Código de Ética Profesional.[15] Si bien los tribunales de instancia poseen mecanismos para controlar y supervisar la conducta de los abogados que postulan ante sí, éstos *no* ostentan la facultad para disciplinarlos cuando violentan los cánones del Código de Ética Profesional. Tal facultad constituye *prerrogativa exclusiva* de este Tribunal. Al constituir la conducta aquí exhibida una abierta violación a los cánones del Código de Ética Profesional, se impone que, en esta ocasión, ejerzamos nuestro poder disciplinario. Ello considerando que conducta de tal índole nos ha llevado, *en el pasado*, a ejercer dicho poder.

Actuar de otro modo tendría el efecto de transmitirle a la clase togada el *peligroso mensaje* de que, ante

---

[15] Véanse: *K-Mart Corp. v. Walgreens of P.R., Inc.*, ante, págs. 637–638; *In re Díaz Alonso, Jr.*, ante, pág. 760.

conducta como la aquí exhibida, este Tribunal permanecerá cruzado de brazos y no ejercerá su función disciplinaria. Ello resulta, en nuestro criterio, *impermisible*. Debemos recordar lo que bien expresamos en una ocasión anterior, a los efectos de que "[*n*]*o podemos pasar por alto los postulados que emanan de los Cánones de Ética Profesional, pues se debilita y amedrenta la confianza depositada en la profesión legal*". (Énfasis suplido.)([16])

## IV

Sólo nos resta determinar la sanción a imponerse en el presente caso a los abogados querellados. Somos del criterio que la conducta observada por los abogados Collazo Maldonado y Rivera Cabrera amerita la imposición de una *suspensión* del ejercicio de la abogacía, y de la notaría, *al primero*, por un período de treinta días, y *al segundo*, por un período de cuarenta y cinco días; términos que comenzarán a contarse a partir de la notificación de la presente Opinión y Sentencia a dichos abogados. Le imponemos a éstos el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, devolver cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Deberán, además, certificarnos dentro del término de treinta días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador.

El Alguacil de este Tribunal procederá de inmediato a incautarse de la obra notarial y sello notarial de Héctor Collazo Maldonado y Nelson Rivera Cabrera, debiendo entregarlos a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

*Se dictará Sentencia de conformidad.*

---

([16]) *In re Bonilla Rodríguez*, 154 D.P.R. 684 (2001).

La Juez Asociada Señora Naveira de Rodón emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión disidente emitida por la Jueza Asociada Señora Naveira de Rodón, a la cual se une el Juez Presidente Señor Andréu García.

El Procurador General expresó una "preocupación por la proliferación de comparecencias de jueces tanto ante el Tribunal Supremo como ante su oficina denunciando irregularidades en torno a la conducta de los abogados que postulan ante ellos sin que éstos, previamente y a tenor con su poder inherente de reglamentar los procedimientos, tomen oportunamente las medidas necesarias para hacer valer dicha prerrogativa".[1] Compartimos esta preocupación y, por ende, entendemos que en este caso el Tribunal no debió ejercer su jurisdicción disciplinaria sobre la conducta procesal negligente reflejada en los autos del foro de instancia en el caso civil que originó la queja. Por esta razón disentimos de la opinión que hoy emite el Tribunal.

El caso de autos ejemplifica el tipo de conducta que debe ser atendida por los jueces de instancia al ejercer el control de su sala y del caso que tienen ante su consideración. Veamos cuáles son los hechos que dieron lugar a que la

---

[1] Informe del Procurador General en *In re William Mariani Román*, AB–2000–137. En este caso, mediante Resolución de 9 de febrero de 2001, expresamos lo siguiente:

"Visto el Informe del Procurador General y la contestación del abogado, se ordena el archivo de este asunto. Aunque el Lcdo. William Marini Román debió ser más diligente en el trámite del caso que origina la queja, el Tribunal de Primera Instancia, Sala Superior de Utuado, Hon. Víctor de Jesús Cubano, debió haber tomado las medidas cautelares correspondientes para hacer valer sus órdenes. Se le apercibe al Lcdo. William Marini Román que en el futuro deberá cumplir estrictamente con las órdenes de los tribunales a riesgo de severas sanciones disciplinarias."

jueza de instancia nos remitiera el expediente del caso para iniciar un trámite disciplinario.

La conducta que da lugar a esta investigación disciplinaria surge de los procedimientos llevados a cabo en el caso *Natividad Colón Salgado y otros v. Hospital Hermanos Meléndez y otros*, Civil Núm. DDP–93–0707(502), en el Tribunal de Primera Instancia, Sala Superior de Bayamón, ante la Honorable Georgina Candal. Éste era un caso de daños y perjuicios por impericia médica.

En la querella presentada por el Procurador General se le imputaron a los Lcdos. Héctor Collazo Maldonado y Nelson Rivera Cabrera violación a los Cánones 12, 18, 35 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX.[2]

El 4 de febrero de 2000 el Comisionado Especial, el ex juez Enrique Rivera Santana, rindió su informe. De las determinaciones de hecho surge que el licenciado Collazo Maldonado acordó con el licenciado Rivera Cabrera, a quien conocía y creía podía dar adecuada atención al caso, que este último se le uniera. Sobre dicha solicitud no medió acuerdo entre la parte demandante y el licenciado Rivera Cabrera. Una vez éste se unió al caso, el licenciado Collazo Maldonado le entregó el expediente y el licenciado Rivera Cabrera asumió el control, aunque al licenciado Collazo Maldonado se le notificaron varias órdenes.

Como bien señala la mayoría, gran parte de los problemas del caso surgen en el ámbito procesal y mayormente

---

[2] "Cargo I: [V]iolentaron los principios establecidos por el Canon 12 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ser conciso y exacto en el trámite y presentación de las causas de s[u] cliente y a evitar indebidas dilaciones en su tramitación y solución.

"Cargo II: [V]iolentaron los principios establecidos por el Canon 18 de Ética Profesional el cual proh[í]be a todo abogad[o a]sumir una representación legal de un cliente cuando est[á] consciente de que no puede rendir una labor idónea competente.

"Cargo III: [V]iolentaron los principios establecidos por el Canon 35 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a ser sincero y honrado en el desempeño profesional y a utilizar medios conscientes con la verdad.

"Cargo IV: [V]iolentaron los principios establecidos por el Canon 38 de Ética Profesional el cual, entre otras cosas, obliga a todo abogado a que en su conducta como funcionarios del tribunal aporten a la consecución de una mejor administración de la justicia." Querella, págs. 1–2.

con lo relacionado a que los demandantes consiguieran un perito. Veamos cuál, en lo pertinente, fue la cronología procesal de este caso.

1. El 14 de octubre de 1994 el licenciado Rivera Cabrera le informó al foro de instancia que había contratado un perito para el caso y que sometería el informe pericial en tres semanas.

2. El 17 de noviembre de 1994 le informó al tribunal que había contratado a la firma J.D.M.D. de Atlanta, una firma que se dedica a ofrecer servicios de peritaje en casos de impericia médica. Esta firma garantiza el que en caso de que el perito que consigan no pueda comparecer o rendir un informe, la firma se obliga a gestionar otro perito que sustente la misma opinión que el anterior. El licenciado Collazo Maldonado no participó en la contratación de esta firma. El acuerdo se realizó entre J.D.M.D. y el licenciado Rivera Cabrera, y los pagos se hacían directamente a la firma, no al perito contratado por ésta, el Dr. Herbert V. Swindell.

3. El 15 de enero de 1995 el tribunal emitió una orden, disponiendo que debido a la tardanza no admitiría el informe pericial en evidencia. El licenciado Rivera Cabrera solicitó la reconsideración y el tribunal reconsideró previó el pago de una sanción de $500 impuesta al abogado. Para esta fecha ya se le había impuesto otra sanción al licenciado Rivera Cabrera de $100 por no haber contestado a tiempo unos interrogatorios. En esta etapa de los procedimientos ya la Honorable Jueza Candal comenzó a advertirle al licenciado Rivera Cabrera de la posibilidad de elevar el caso ante el Tribunal Supremo si no depositaba la totalidad de las sanciones en diez días.

4. El 4 de abril de 1995 se presentó un informe pericial preliminar que no estaba unido al expediente cuando la jueza emitió la antes mencionada orden.

5. El 5 de mayo de 1995 se señaló una conferencia con antelación al juicio que no se pudo llevar a cabo. El tribu-

nal entendió que esto se debió al licenciado Rivera Cabrera, por lo que le impuso una sanción adicional de $200. En la minuta se hizo constar que la jueza Candal había expresado que estaba preparando una resolución sobre el licenciado Rivera Cabrera para someterla al Tribunal Supremo por negarse éste a ofrecer la dirección de su representada. Ese mismo día dicho abogado ofreció la dirección de la codemandada Natividad Colón Salgado y el tribunal ordenó que le notificaran directamente varias órdenes.

6. El 1 de agosto de 1995, luego de varios trámites, el tribunal dispuso que si no se presentaba el informe pericial se desestimaría la demanda.

7. El 10 de agosto de 1995 se celebró una conferencia con antelación al juicio y, entre otras cosas, se indicó que aún no se había terminado el descubrimiento de prueba y que estaba programada la toma de una deposición al doctor Swindell, el perito anunciado por la parte demandante. Ambos abogados de la parte demandante, los licenciados Rivera Cabrera y Collazo Maldonado, estuvieron presentes. En la vista que se celebró ese día, la jueza Candal hizo un recuento de todas las órdenes incumplidas por el licenciado Rivera Cabrera, señaló fecha para la discusión de una moción de desestimación y de sentencia sumaria, y advirtió que para esa fecha debería estar lista la transcripción de la deposición que se le tomara al doctor Swindell. Por último, autorizó que las sanciones fueran pagadas en plazos de $200 mensuales.

8. Del expediente no surge lo que ocurrió procesalmente en este caso en 1996, si algo.

9. En 1997 hubo una conferencia con antelación al juicio a la cual no comparecieron los abogados de la parte demandante. Se indicó que éstos tampoco habían presentado el informe pericial. La jueza Candal emitió una orden para que la parte demandante mostrara causa por la cual no debía desestimarse la acción. Advirtió además que para la toma de deposición que estaba programada para el 22 de

marzo de 1997, debían tener disponible al perito y que de no cumplir les impondría una sanción de $1,000.

10. Del informe del Comisionado Especial surge que ya desde abril de 1995 el licenciado Rivera Cabrera sabía que el doctor Swindell no podría comparecer ni a la toma de deposición ni al juicio. Mediante comunicaciones escritas de 13 de marzo y 10 de agosto de 1995, el doctor Swindell le había notificado que no podía comparecer ni a la toma de deposición ni al juicio. Esto implicaba que J.D.M.D. tenía que buscar otro perito para el caso y esto significaba costos adicionales para obtener el peritaje. Ni el licenciado Collazo Maldonado ni los abogados de la parte demandada, ni el tribunal de instancia, fueron informados de esta situación. Como consecuencia de esto y de los incumplimientos del licenciado Rivera Cabrera, y de las sanciones que le impusieron, el licenciado Collazo Maldonado le solicitó la renuncia. A pesar de que el licenciado Collazo Maldonado le informó a uno de los abogados de los demandados de los problemas confrontados con la obtención de un perito, no presentó escrito alguno para hacerle llegar esta información al tribunal. Fue uno de los codemandados quien le informó al tribunal.

11. Finalmente, los licenciados Collazo Maldonado y Rivera Cabrera renunciaron a la representación legal de la parte demandante. Al 28 de diciembre de 1999 las sanciones impuestas no habían sido satisfechas. El tribunal decidió elevar el expediente al Tribunal Supremo para que se investigara la conducta profesional de ambos abogados.

Una vez sometido el informe del Comisionado Especial, le concedimos un término a los letrados querellados para que se expresaran. Éstos optaron por no comparecer. Cabe señalar que el licenciado Rivera Cabrera no contestó la querella ni compareció en los procedimientos ante el Comisionado Especial.

Primero, quisiéramos comenzar por reconocer la dificultad que en muchas ocasiones confrontan los abogados de la

parte demandante en casos de reclamaciones de daños por impericia médica en obtener peritos para probar sus casos. Esto, sin embargo, no excusa la falta de diligencia ni su deber de informarle, prontamente, tanto al tribunal como a los demandados y a sus clientes, de los problemas que confrontan en obtener dicho peritaje. Los problemas procesales que emanan de estas situaciones deben ser resueltos por el foro de instancia, que cuenta con múltiples mecanismos para lograr que los casos se resuelvan de forma justa, rápida y económica a tenor con lo dispuesto en la Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Contrario a la mayoría, estimamos que la falta de pago de sanciones impuestas por el tribunal a un abogado, tanto a favor de una parte como a favor del Estado, tampoco constituye una razón para elevar el expediente ante el Tribunal Supremo para el inicio de un proceso disciplinario y la eventual imposición de medidas disciplinarias. Tanto el Estado como las partes cuentan con mecanismos procesales adecuados para hacer cumplir estas órdenes; el trámite disciplinario no es la medida apropiada.[3]

Entendemos que el procedimiento disciplinario no debe utilizarse como sanción para un abogado que no ha sido puntual en su asistencia, ni conciso ni exacto en el trámite y presentación de las causas. Tampoco debe utilizarse contra el abogado que no ha podido producir un perito. En el caso de autos, no nos cabe duda que el licenciado Rivera Cabrera no fue diligente en la tramitación del caso y que incurrió en una falla procesal al no informarle, tanto al tribunal como a las partes, que no podría someter el informe pericial ni producir el perito para que fuera depuesto. Esto causó, por consiguiente, una dilación injustificada en el trámite procesal. Estas actuaciones, sin embargo, deben atenderse dentro del trámite procesal del

---

[3] Aunque no es obligación del tribunal, al ser de carácter rogado, como regla general, nuestro Derecho, el tribunal puede también, *motu proprio*, hacer cumplir el pago de las sanciones, utilizando, por ejemplo, los mecanismos de desacato.

caso en el foro de instancia. Cabe señalar que tan pronto se enteró el tribunal de instancia, tomó las medidas pertinentes e hizo innecesario que se utilizara el proceso disciplinario. Las faltas atribuidas al licenciado Collazo Maldonado son mucho menores y definitivamente no ameritan proceso disciplinario alguno.

Por las razones antes expuestas, disentimos de la opinión que hoy emite la mayoría. Entendemos que, a pesar de que las actuaciones del licenciado Rivera Cabrera denotan una gran falta de diligencia y una actitud algo displicente, contrario a la mayoría del Tribunal entendemos que éste no es el tipo de caso en el que debemos ejercer nuestra jurisdicción disciplinaria.[4] El foro de instancia actuó enérgicamente y de forma adecuada con la conducta desplegada por el licenciado Rivera Cabrera. En cuanto a la conducta antiética que se le imputa al licenciado Collazo Maldonado, reiteramos que ésta no amerita proceso disciplinario alguno.

Por último, cabe señalar que el cliente de los licenciados Rivera Cabrera y Collazo Maldonado no presentó queja alguna en contra de éstos.

---

[4] Tomamos conocimiento de que en los recursos que se presentan ante nosotros, un número sustancial refleja una conducta similar a la de los licenciados Rivera Cabrera y Collazo Maldonado. Sin embargo, no ordenamos, *motu proprio*, su investigación disciplinaria. Tampoco hacemos observación disciplinaria alguna. Cabe señalar que denegamos un número considerable de recursos por falta de jurisdicción cuando el abogado de un peticionario no cumple con los términos jurisdiccionales prescritos por ley o por no perfeccionar el recurso adecuadamente a tiempo, o por incumplir de forma crasa con nuestro reglamento o el del Tribunal de Circuito de Apelaciones. A pesar de esto, no iniciamos trámite disciplinario alguno ni censuramos o amonestamos a estos abogados. Entendemos que por el solo hecho de que un juez de instancia nos haya remitido el expediente de un caso para trámite disciplinario, no lo hace más importante ni adecuado que los casos que vienen ante nuestra atención en el curso apelativo normal y que reflejan igual tipo de conducta.