Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LUIS DANIEL SAMBOLIN ROBLES<br><br>Peticionario<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN DE PUERTO RICO P/C SECRETARIO DE JUSTICIA Y OTROS<br><br>Recurrido | KLCE202301101 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Guayama<br><br>Sobre:<br>*Mandamus*<br><br>Caso Número:<br>GM2022CV00798 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, jueza ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 11 de diciembre de 2023.

El peticionario, Luis Daniel Sambolin Robles, comparece ante nos en forma pauperis para que dejemos sin efecto la determinación emitida y notificada el 22 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala de Guayama. Mediante la misma, el foro primario determinó que carecía de jurisdicción sobre la materia para atender la *Demanda* de epígrafe, la cual fue presentada por el peticionario en contra del Departamento de Corrección y Rehabilitación de Puerto Rico; Estado Libre Asociado de Puerto Rico; Secretario de Justicia; Departamento de Hacienda. Todo, dentro de un pleito sobre *mandamus,* en solicitud de un incentivo económico al amparo de las legislaciones federales: Coronavirus Aid, Relief, and Economic Security Act, 15 USCA sec. 9041, *et seq,* (en adelante, por sus siglas, "Cares Act") y Covid Related Tax Relief Act of 2020, 26 USCA 1, nt. (en adelante, por sus siglas "CRTRA").

Por los fundamentos que expondremos a continuación, se deniega la expedición del presente auto.

## I

El 29 de noviembre de 2022, el peticionario presentó ante el Tribunal de Primera Instancia un escrito intitulado *Demanda*.[1] En el mismo, solicitó como remedio, que el foro primario ordenara al Departamento de Hacienda el desembolso de un incentivo económico, según consagrado en las leyes federales: Cares Act y CRTRA, *supra*, el cual sostuvo, tenía derecho a recibir.

En esa misma fecha, surgen presentadas otras dos (2) mociones por el peticionario. Una desde la dirección de una Institución Penal en Guayama y la otra desde una Institución Penal localizada en Aguadilla. Estas se intitularon *Moción en Solicitud de Estatus*. En esencia, por medio de los referidos escritos requirió se ordenara al Departamento de Hacienda el desembolso a su favor de $3,200. De igual modo, informó, que firmó y juramentó una serie de documentos requeridos para tal fin.

Así las cosas, el 6 de diciembre de 2022, el foro de origen, notificó una *Orden*. Mediante esta, le concedió al peticionario un término de diez (10) días, so pena de desestimación, para que informara si había completado la *Solicitud de Impacto Económico de $1,200, $600 y $1,400* del *Área de Rentas Internas y Política Contributiva del Departamento de Hacienda*.

El 21 de diciembre de 2022, el peticionario, presentó un escrito al tribunal primario, mediante el cual informó su traslado a la Institución Penal de Guayama. En esa misma fecha, surge presentado otro escrito intitulado *Demanda*. Mediante este, el peticionario indicó que había transcurrido un año y tres meses desde que instó su petitorio de desembolso de asistencia federal. Además, reiteró su solicitud de orden para que el Departamento de Hacienda desembolsara la cantidad de $3,200.

---

[1] Junto a su escrito anejó un documento intitulado *Informe de Transacciones del Confinado*.

El 10 de enero de 2023, el Tribunal de Primera Instancia dictó una *Sentencia.*[2] Por medio de su dictamen, el referido foro desestimó, sin perjuicio, la Demanda de epígrafe, bajo el fundamento de que el peticionario tenía que cumplir con el procedimiento creado por el Departamento de Hacienda para estos casos y agotar dicho remedio. Así, el Tribunal de Instancia precisó que existía un remedio adecuado que agotar ante el Departamento de Hacienda para solicitar y poder beneficiarse de los referidos fondos. Valga destacar que, junto a la *Sentencia,* se le proveyó al peticionario el formulario pertinente.

El 26 de enero de 2023, el peticionario presentó al foro recurrido un escrito intitulado *Notificación.* Adujo, que el 23 de diciembre de 2022, fue la fecha en que recibió la notificación de la *Orden* que el Tribunal de Primera Instancia había emitido el 5 de diciembre de 2022. Por ello, sostuvo que, se vio imposibilitado de contestar dentro del término ordenado por el tribunal.

En atención al escrito, el 27 de enero de 2023, el Tribunal de Primera Instancia emitió una *Resolución,* mediante la cual, señaló al peticionario que, junto a la notificación de la *Sentencia,* se le envió la *Solicitud de Pago de Impacto Económico* para que nuevamente la completara y le diera seguimiento al Departamento de Hacienda.

Así las cosas, el 30 de enero de 2023, el peticionario presentó al foro de origen una moción intitulada *Notificación.* En su pliego, informó que, por conducto de su socio-penal, envió la documentación requerida al Departamento de Hacienda. Anejó a su escrito un documento intitulado *Cuestionario para los Pagos de Impacto Económico de Confinados,* firmado por un empleado del Departamento de Corrección y Rehabilitación con fecha del 14 de

---

[2] En la *Sentencia* se hace alusión a una moción de desestimación la cual no fue anejada al recurso ni aparece en el Sistema Unificado de Manejo y Administración de Casos (en lo sucesivo, por sus siglas "SUMAC").

septiembre de 2021. Al día siguiente, 31 de enero de 2023, el foro recurrido notificó una *Resolución*. En esta, le indicó al peticionario que debía dar seguimiento a su petitorio en el Departamento de Hacienda.

Varios meses después, el 21 de septiembre de 2023, el peticionario presentó nuevamente ante el foro primario un escrito intitulado *Demanda*. Por medio de este, arguyó que cumplió con los documentos requeridos para el desembolso del aludido impacto económico. Al día siguiente, y luego de evaluado el pliego presentado, el 22 de septiembre de 2023, el Tribunal de Primera Instancia notificó la *Resolución* que nos ocupa. En esta, determinó que el foro judicial carecía de jurisdicción sobre la materia para atender el asunto presentado, dado que, la solicitud de impacto económico debía ser gestionada ante el Departamento de Hacienda.

Inconforme, el 6 de octubre de 2023, el peticionario presentó ante este Tribunal un escrito intitulado *Reconsideración*. En su escrito, el peticionario indica que le presentó al Tribunal de Primera Instancia copias de planillas que llevó a su sociopenal, respuestas de remedios administrativos del Departamento de Corrección y Rehabilitación y cartas dirigidas a dicha agencia. Indica que ha utilizado todos los mecanismos existentes para resolver su reclamo. Junto al escrito sólo presentó copia de la *Resolución* recurrida. Sin embargo, a pesar del incumplimiento con las exigencias reglamentarias, hemos examinado, previo a la adjudicación, el Sistema Unificado de Manejo y Administración de Casos para darle un acceso a la justicia al peticionario que se encuentra confinado.

## II

### A

Por su parte, sabido es que el recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera*

*Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023); *Mcneil Healthcase v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021); 800 *Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Mediante la presentación de un recurso de *certiorari*, se pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso que atienden. Distinto al ejercicio de sus funciones respecto a un recurso de apelación, el tribunal al que se recurre mediante el vehículo procesal del recurso de *certiorari* tiene discreción para atender el asunto planteado, ya sea expedir el auto solicitado o denegarlo. *800 Ponce de León v. AIG*, supra; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593 (2011); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). No obstante, "[e]l examen que hace el tribunal apelativo, previo a expedir un *certiorari*, no se da en el vacío ni en ausencia de otros parámetros." *800 Ponce de León v. AIG*, supra; *IG Builders et al. v. BBVAPR*, supra.

La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Ahora bien, la correcta consecución de la justicia necesariamente conlleva reconocer a los juzgadores de los foros primarios un amplio margen de deferencia respecto al ejercicio de sus facultades adjudicativas dentro del proceso que dirigen. De ordinario, el criterio judicial empleado en el manejo de un caso al emitir pronunciamientos de carácter interlocutorio está revestido de gran autoridad. De ahí la premisa normativa que califica la tramitación de los asuntos en el tribunal primario como una inherentemente discrecional del juez. Siendo así, y sin apartarse de los preceptos pertinentes al funcionamiento del sistema judicial, el adjudicador concernido está plenamente facultado para conducir el proceso que atiende conforme le dicte su buen juicio y discernimiento, siempre al amparo del derecho aplicable. *In re Collazo I,* 159 DPR 141, 150 (2003); *Vives Vázquez v. E.L.A.,* 142 DPR 117, 142 (1987). Cónsono con ello, sabido es que los tribunales apelativos no "deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al v. ACBI et al.,* 200 DPR 724, 736 (2018). La discreción es el más poderoso instrumento reservado al juzgador. *Rodríguez v. Pérez,* 161 DPR 637, 651 (2004). Al precisar su alcance, el estado de derecho lo define como la autoridad judicial para decidir entre uno o varios cursos de acción, sin que ello signifique abstraerse del resto del derecho. *Citibank et al v. ACBI et al.,* supra. Su más adecuado ejercicio está inexorablemente atado al

concepto de la razonabilidad, de modo que el discernimiento judicial empleado redunde en una conclusión justiciera. *Citibank et al v. ACBI et al.,* supra; *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016); *García v. Asociación,* 165 DPR 311, 321 (2005). En consecuencia, la doctrina establece que un tribunal incurre "en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable". *Citibank et al v. ACBI et al.,* supra, pág. 736.

**B**

De otro lado, el auto de *mandamus* es un recurso extraordinario altamente privilegiado y discrecional, cuya expedición persigue ordenar, a determinada persona natural, corporación, o tribunal de inferior jerarquía, el cumplimiento o la ejecución de algún acto propio a sus deberes y atribuciones. Artículo 649 del Código de Enjuiciamiento Civil de Puerto Rico, 32 LPRA sec. 3421; *Kilómetro 0 v. Pesquera López* et al., 207 DPR 200, 214 (2021); *AMPR v. Srio. Educación, E.L.A.,* 178 DPR 253, 263 (2010); *Noriega v. Hernández Colón,* 135 DPR 406, 447 (1994). El referido mecanismo resulta idóneo para exigir la realización de una obligación impuesta por ley, siempre que no exista otro remedio a tal fin. Sin embargo, la misma debe ser una de naturaleza *ministerial,* calificación que implica la inadmisibilidad de discreción alguna en su ejercicio. *Álvarez de Choudens v. Tribunal Superior,* 103 DPR 235, 242 (1975). Así, el deber de que trate tiene que ser uno mandatorio e imperativo. *AMPR v. Srio. Educación, E.L.A.,* supra, pág. 263. De este modo, su ejecución debe ser una claramente definida, es decir, que "la ley no sólo debe autorizar, sino

exigir la acción requerida." *Id.,* pág. 264, citando a R. Hernández Colón, *Derecho Procesal Civil,* 4ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2007, pág. 477.

El recurso discrecional de *mandamus* está disponible, no para reemplazar los remedios legales alternos que provean para lo solicitado, sino para suplir la falta de los mismos. *AMPR v. Srio. Educación, E.L.A.,* supra, pág. 266-267. Así pues, en la consideración de la referida tarea adjudicativa, el tribunal competente debe considerar lo siguiente: 1) el posible impacto que pueda tener sobre los intereses públicos involucrados; 2) evitar una intromisión indebida en los procedimientos del poder ejecutivo y; 3) que el auto no se preste a confusión o perjuicios de los derechos de terceros. *Íd,* a la página 268*; Báez Galib y otros v. CEE II,* 152 DPR 382, 392 (2000).

Ahora bien, en lo aquí pertinente, destacamos que su eficacia jurídica está supeditada al cumplimiento de ciertos requisitos de forma y contenido debidamente estatuidos en el ordenamiento jurídico. Al respecto, la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, R. 54, dispone como sigue:

> El auto de *mandamus* tanto perentorio como alternativo, podrá obtenerse presentando una solicitud jurada al efecto. Cuando se solicite dicho remedio y el derecho a exigir la inmediata **ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo,** el tribunal podrá ordenar perentoriamente la concesión del remedio; de otro modo, ordenará que se presente una contestación y tan pronto sea conveniente, celebrará una vista, recibiendo prueba, si es necesario, y dictará su decisión prontamente. Se obtendrá el cumplimiento de las órdenes dictadas por el tribunal del mismo modo en que se exige el cumplimiento de cualquier otra orden.

Por su parte, como regla general, previo a acudir al tribunal mediante el mecanismo de *mandamus,* la parte interesada debe haber interpelado al funcionario responsable de cumplir la obligación ministerial que se exige. *Bhatia Gautier v. Gobernador,* 199 DPR 59, 75 (2017); *AMPR v. Srio. Educación, E.L.A.,* supra.

### III

El peticionario presentó ante este Foro un recurso intitulado *Reconsideración*, el cual solo consta de una página y media. En su escrito, tal cual previamente esbozado, el peticionario nos solicitó que revisáramos una *Resolución* postsentencia emitida por el tribunal primario, mediante la cual, dicho foro determinó que carecía de jurisdicción para atender la controversia presentada.

Acoger un recurso de *certiorari* implica analizar minuciosamente la Regla 40, *supra*, para determinar si de sus disposiciones se desprende algún criterio que nos permita imponer nuestro juicio sobre las consideraciones de hechos y de derecho del foro de origen. Así pues, tras examinar de forma cuidadosa los documentos de autos, determinamos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre el planteamiento que el peticionario propone ante este Foro, y al evaluar los requisitos para la presentación eficaz de un recurso de *mandamus*, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al dictaminar la *Resolución* que nos ocupa.

Según se fue esbozado, el *mandamus* es un recurso extraordinario. Para que este proceda, se requiere que el peticionario demuestre que previamente interpeló al Departamento concernido y que su requerimiento no fue debidamente atendido. *Romero, Valentín v. Cruz, CEE et al*, 205 DPR 972, 985 (2020). De igual modo, deberá demostrar el derecho de exigir la inmediata ejecución de un acto. Asimismo, el *mandamus*, tiene como requisito que sea presentado mediante una petición jurada, lo cual no se desprende de los documentos ante nuestra consideración.

De otra parte, surge del tracto procesal expuesto, que el Tribunal de Primera Instancia ha orientado al peticionario de cómo realizar la gestión del aludido desembolso económico ante el

Departamento de Hacienda. Aún más, cuando notificó la *Sentencia* el 10 de enero de 2023 le proveyó el formulario requerido por el Departamento de Hacienda para tal fin. El mero hecho de que el peticionario haya presentado el *Cuestionario para los Pagos de Impacto Económico de Confinados* al Departamento de Corrección y Rehabilitación, en el año 2021, no implica que, automáticamente, los tribunales puedan emitir un *mandamus*.

Orientamos por este medio al peticionario de que deberá demostrar al tribunal que cumplimentó el formulario requerido ante el Departamento de Hacienda y que cumple con los criterios para ser merecedor del desembolso solicitado, según la ley aplicable.

Por tanto, en mérito de lo anterior, denegamos expedir el auto solicitado, dado que, no existen criterios legales para intervenir y sustituir el criterio utilizado por el Tribunal de Primera Instancia en el ejercicio de su discreción.

## IV

Por los fundamentos expuestos, denegamos el recurso de *certiorari* presentado.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal. La Jueza Grana Martínez disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LUIS DANIEL SAMBOLIN ROBLES<br><br>Peticionario<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN DE PUERTO RICO P/C SECRETARIO DE JUSTICIA Y OTROS<br><br>Recurrido | KLCE202301101 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Guayama<br><br>Sobre:<br>*Mandamus*<br><br>Caso Número:<br>GM2022CV00798 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

### VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

El 29 de noviembre de 2022, el señor Sambolín Robles o peticionario, presentó ante el Tribunal de Primera Instancia varios escritos que, en esencia, suplicaban al foro recurrido ayuda para obtener un reembolso por parte del Departamento de Hacienda. Arguyó que, desde junio de 2021, había hecho todas las gestiones pertinentes para solicitar la ayuda, había enviado carta al Departamento de Hacienda, sin que este atendiera su reclamo. Reclamó la ayuda del tribunal por no tener familia que le asistiera en dichos trámites. Así las cosas, el 6 de diciembre de 2022, el TPI concedió el término de diez (10) días al señor Sambolín Robles para informar si completó la "solicitud de pago de impacto económico de $1,200, $600 y $1,400" del área de rentas internas y política contributiva, del Departamento de Hacienda, como requisito previo de presentar la demanda de mandamus, so pena de desestimación.[1] Se diligenciaron emplazamientos al Departamento de Corrección y al Departamento de Hacienda.



---

[1] La alegación principal del peticionario en su escrito titulado *Notificación* era que la había completado.

evidencia de haber cumplimentado el Formulario del Departamento de Hacienda de solicitud de los fondos, el 14 de septiembre de 2021. ¿Para qué insistir en que complete una solicitud que consta en el expediente electrónico que lleno? Para este tribunal, tal evidencia no justifica la expedición de un mandamus, por lo que deniegan el recurso presentado. No obstante, y a pesar de denegar el mismo, analizan e intiman al peticionario a demostrar al tribunal que cumplimentó el formulario requerido ante el Departamento de Hacienda y que cumple con los criterios para ser merecedor del desembolso solicitado. No puedo avalar tal curso de acción.

Aspiro a [p]ropiciar un sistema de justicia en el que se provea acceso inmediato y económico para atender los reclamos de la ciudadanía, que sea sensible a la realidad particular de los distintos componentes de nuestra sociedad, y que informe a la ciudadanía sobre sus derechos y responsabilidades, así como de todos los aspectos del proceso judicial." El mandato constitucional para los jueces es que el sistema de justicia sea de la mejor calidad, rápido, económico y accesible. Para lograr ese propósito, se han modificado procesos e incorporado nuevas herramientas, se ha intensificado el uso de tecnología electrónica;[2] métodos alternos de solución de disputas, con desvío de casos de su entorno contencioso, consolidación de sesiones del Tribunal de Primera Instancia, acceso a justicia apelativa, y el establecimiento de metas que agilicen el manejo de los casos y su procesamiento.[3]

Específicamente, se le pide a la judicatura; [ser] independiente y accesible a la ciudadanía; prestar servicios de manera equitativa, sensible y con un enfoque humanista y operar bajo sistemas para el



---

[2] SUMAC.
[3] Exposición de Motivos, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 4 et seq.

manejo de casos de forma efectiva y rápida, sin menoscabar los derechos sustantivos y procesales de la ciudadanía.[4]

Estoy consciente de que el recurso es, en extremo escueto, que no hizo un solo señalamiento de error, mucho menos lo discutió. Pero distingo claramente que lo que se nos pide es que obligue al Departamento de Hacienda a cumplir con su deber ministerial de evaluar su elegibilidad para recibir los fondos del Cares Act., que fueron concedidos a los miembros de las instituciones carcelarias que cumplían con ciertos criterios.[5]

El Tribunal Supremo de Puerto Rico (TSPR) ha identificado en la litigación por derecho propio, la situación particular de las personas que están privadas de su libertad. Ha reconocido características muy particulares que inciden en la litigación de los confinados. El TSPR lo ha vinculado al llamado de la Ley de la Judicatura a ser sensible a la realidad particular de los distintos componentes de la sociedad. *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 322 (2009). A tal fin, ha rechazado, expresamente, la aplicación automática e inflexible de los requisitos reglamentarios que prive a un litigante de su derecho de acceso a los tribunales. *Álamo Romero v. Adm. Corrección*, supra; *Gran Vista I v. Gutiérrez Santiago y otros*, 170 DPR 174, 186 (2007); *Rodríguez v. Sucn. Martínez*, 151 DPR 906, 913 (2000). Se ha considerado, entre otras cosas, la falta de control por parte de los reclusos sobre el manejo de su correspondencia como parte de la problemática relacionada al confinamiento. *Álamo Romero v. Adm. Corrección*, supra. Como consecuencia, entre otras, el TSPR ha dispuesto que, en los casos de revisión judicial de decisiones administrativas de la

---

[4] 4 LPRA sec. 24a (a).

[5] Para la absoluta comprensión de esta controversia, he accedido al Sistema Unificado de Manejo y Administración de casos (SUMAC). Herramienta tecnológica que nos permite dispensar una justicia más rápida y completa. SUMAC responde al mandato de mejoramiento de acceso a la justicia mediante el uso de la tecnología.

Administración de Corrección en procedimientos disciplinarios instados por reclusos por derecho propio, se entenderá que el recurso fue presentado en la fecha de entrega a la institución carcelaria. *Álamo Romero v. Adm. Corrección*, supra, pág. 323. Y es que el hecho de estar privado de su libertad no implica que estén fuera del alcance de la Constitución. Ellos "poseen aquellos derechos que no resulten incompatibles con los propósitos del confinamiento". *Álamo Romero v. Adm. Corrección*, supra, pág. 331; *Pueblo v. Falú Martínez*, 116 DPR 828, 836 (1986).

Existe una política de facilitar el acceso a la justicia. Concluyo que no estamos ante un caso frívolo, ni pretendo guiar los trabajos del foro primario. Mas bien mi propuesta persigue ser accesible a la ciudadanía, prestando servicios de manera sensible y con un enfoque humanista, de manera efectiva y rápida. Al expedir y revocar, según propongo, de manera alguna se menoscaban los derechos sustantivos y procesales de la ciudadanía. Mas bien, evitamos la radicación y tramitación de otro recurso ante el foro primario para solicitar, lo que me queda claro, la evaluación del peticionario a los efectos de determinar si cualifica para recibir la ayuda federal.

En San Juan, Puerto Rico, a 11 de diciembre de 2023.

Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones