ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MORTGAGE ASSETS MANAGEMENT, LLC<br><br>Recurrido<br><br>v.<br><br>LA SUCESIÓN DE ESTHER JUANA VÉLEZ IRIZARRY T/C/C JUANA VÉLEZ IRIZARRY compuesta por FULANO DE TAL COMO y FULANA DE TAL COMO POSIBLES HEREDEROS DESCONOCIDOS CON INTERÉS EN LA SUCESIÓN; LA SUCESIÓN DE ROBERTO APONTE MATOS compuesta por SUTANO DE TAL y SUTANA DE TAL COMO POSIBLES HEREDEROS DESCONOCIDOS CON INTERÉS EN LA SUCESIÓN; ESTADOS UNIDOS DE AMÉRICA; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM)<br><br>Peticionarios | KLCE202500029 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Civil. Núm. UT2021CV00505<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Díaz Rivera y el Juez Sánchez Báez[1]

Sánchez Baez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de octubre de 2025.

Compareció el peticionario, el Sr. Manuel Francisco Pietri Vélez (en adelante, "peticionario" o "señor Pietri Vélez"), mediante el recurso de *Certiorari* presentado el 10 de enero de 2025. Nos solicitó la revisión de *Resolución: Relevo de Sentencia* emitida el 9 de diciembre de 2024, y notificada el 11 de diciembre de 2024, por el

---

[1] Mediante la Orden Administrativa OATA-2025-018 emitida el 10 de febrero de 2025, se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Camille Rivera Pérez.

Tribunal de Primera Instancia, Sala de Utuado. Mediante esta, el Foro Primario relevó la *Sentencia en Rebeldía*.

Por los fundamentos que expondremos a continuación, **se deniega la expedición** del auto de *Certiorari*.

-I-

El 9 de diciembre de 2021 Wilmington Savings Fund Society, FSB (en adelante, "Wilmington Savings") presentó una *Demanda* sobre ejecución de hipoteca, en contra de la Sucesión de Esther Juana Vélez Irizarry, compuesta por Fulano de Tal y Fulana de Tal como posibles herederos, y la Sucesión de Roberto Aponte Matos, compuesta por Sutano de Tal y Sutana de Tal como posibles herederos, entre otros.[2] En síntesis, alegó que los causantes suscribieron un pagaré hipotecario a favor de Generation Mortgage Company. En garantía de lo anterior, sostuvo que se constituyó una hipoteca sobre un inmueble ubicado en el Barrio Capáez, en Adjuntas. Al fallecer ambos causantes, arguyó que la deuda correspondiente era una vencida, líquida y exigible, por lo que solicitó que se ordenara la ejecución de la hipoteca y la venta de la propiedad en pública subasta.

Posteriormente, el 21 de marzo de 2022, Wilmington Savings presentó una *Moción Sometiendo Emplazamientos Diligenciados y Solicitando Emplazamiento por Edicto*.[3] En la misma, señaló que, tras llevar a cabo múltiples diligencias, le fue imposible emplazar a los miembros de la sucesión de ambos causantes. Por ello, le solicitó al Foro de Instancia que se expidieran los emplazamientos por edicto. Anejó una declaración jurada suscrita por el emplazador Antonio Colón Rivera III. En lo pertinente, este expresó que tuvo una conversación con el señor Pietri Vélez, quien le informó que era el sobrino de la causante Esther Juana Vélez Irizarry. Además, declaró

---

[2] Apéndice del peticionario, págs. 10-16.
[3] *Íd.*, págs. 34-36.

que el señor Pietri Vélez le indicó que el causante Roberto Aponte Matos tenía dos (2) hijos, pero que estos vivían en Estados Unidos y no tenía comunicación con estos.

Así, el 25 de marzo de 2022, el Foro Primario notificó una *Orden* autorizando el emplazamiento por edicto.[4] El mismo se publicó el 6 de abril de 2022, en el periódico *El Nuevo Día*.[5] Posterior a ello, el 29 de junio de 2023, el recurrido, Mortgage Assets Management, LLC (en adelante, "recurrido" o "Mortgage Assets") sustituyó a Wilmington Savings como demandante en el caso.[6]

Así las cosas, el 17 de octubre de 2023, Mortgage Assets presentó una *Moción Solicitando Sentencia en Rebeldía*.[7] En la misma, alegó que, a pesar de haber sido debidamente emplazados, los posibles miembros desconocidos de las sucesiones no comparecieron. Por lo cual, solicitó que se le anotara la rebeldía a los demandados y se dictara sentencia ordenando la ejecución de la referida hipoteca. Por consiguiente, el 24 de abril de 2024, el Tribunal de Primera Instancia notificó la *Sentencia en Rebeldía* mediante edicto.[8] En efecto, el Foro Primario le anotó la rebeldía a los demandados, y declaró *Con Lugar* la demanda. Además, determinó que, en defecto del pago de la cantidad adeudada, Mortgage Assets podría solicitar la ejecución de su crédito hipotecario, así como la venta en pública subasta del inmueble en controversia.

Posteriormente, el 4 de junio de 2024, el señor Pietri Vélez compareció a través de una *Comparecencia Especial en Desestimación, Nulidad de Emplazamientos, Nulidad de Sentencia y otros Remedios*.[9] En lo pertinente, el peticionario alegó que era el

---

[4] *Íd.*, pág. 58.
[5] *Íd.*, págs. 60-61.
[6] *Íd.*, pág. 125.
[7] *Íd.*, págs. 127-130.
[8] *Íd.,* págs. 188-191.
[9] *Íd.*, págs. 208-226.

sobrino y heredero universal de Esther Juana Vélez Irizarry, así como que conocía a los herederos de Roberto Aponte Matos, y que la propiedad en controversia era su residencia principal. Además, planteó que los emplazamientos no fueron diligenciados conforme a derecho, por lo que solicitó que se dejara sin efecto la *Sentencia en Rebeldía*, así como que se desestimara el caso.

Consecuentemente, el 2 de julio de 2024, Mortgage Assets presentó una *Moción en Oposición a Desestimación y otros Extremos*.[10] En resumen, negó que los emplazamientos hubiesen sido insuficientes. Adujo que, debido al desconocimiento de la identidad de los miembros de las sucesiones, notificó el emplazamiento a la última dirección conocida de los causantes, la cual corresponde a la propiedad objeto del pleito. Sostuvo que acumuló a los miembros de la sucesión como partes ficticias, por lo que, de el señor Pietri Vélez demostrar satisfactoriamente que era un heredero, correspondía sustituir a la parte por su nombre correcto.

El 30 de septiembre de 2024, el señor Pietri Vélez presentó una *Comparecencia Especial en Cumplimiento de Orden y en Apoyo a Desestimación*.[11] Con su escrito, anejó el testamento otorgado por cada causante. De estos surgió que, tanto Esther Juana Vélez Irizarry, como Roberto Aponte Matos, habían nombrado como heredero y albacea al señor Pietri Vélez. Además, el testamento otorgado por Roberto Aponte Matos reflejó que este también nombró como herederos a sus dos (2) hijos, Sonia Aponte Rivera y Luis Roberto Aponte Rivera.

Más adelante, el 18 de octubre de 2024, Mortgage Assets presentó una *Moción en Cumplimiento de Orden*, mediante la cual accedió a que se dejara sin efecto la *Sentencia en Rebeldía*,

---

[10] *Íd.*, págs. 249-257.
[11] *Íd.*, págs. 270-272.

únicamente con el propósito de darle al peticionario oportunidad de contestar la demanda y que se refiriera el caso al proceso de mediación.[12] Sin embargo, el 18 de noviembre de 2024, el señor Pietri Vélez se opuso e insistió en que se desestimara el caso.[13]

Así las cosas, el 11 de diciembre de 2024, el Tribunal de Primera Instancia notificó la *Resolución: Relevo de Sentencia.*[14] En su dictamen, el Foro Primario reconoció que el señor Pietri Vélez era el heredero y el albacea instituido por Esther Juana Vélez Irizarry, al igual que por Roberto Aponte Matos. Por lo cual, concluyó, al estar dirigida la *Demanda* en contra de la sucesión de los referidos causantes, tanto el señor Pietri Vélez, como los dos (2) hijos de Roberto Aponte Matos, eran partes indispensables. Sin embargo, razonó que, previo a desestimar el caso, le daría la oportunidad a Mortgage Assets para incluir a los miembros de la sucesión mediante su oportuno emplazamiento. Explicó que ello le daría la oportunidad a los demandados de contestar el pliego, así como de referir el caso a un proceso de mediación. De esta forma, relevó la *Sentencia en Rebeldía,* así como que ordenó a Mortgage Assets a enmendar la *Demanda* y emplazar a los miembros conocidos de las referidas sucesiones. Consecuentemente, el 10 de enero de 2025, Mortgage Assets presentó la *Demanda Enmendada.*[15]

Inconforme, el 10 de enero de 2025, el peticionario acudió ante este Tribunal mediante el recurso de epígrafe. En el mismo, señala la comisión de los siguientes errores:

> Erró el Tribunal de Instancia cuando se negó a desestimar el caso.
> Erró el Tribunal de Instancia cuando expidió el relevo de sentencia sin sancionar a los demandantes.

---

[12] *Íd.*, págs. 284-285.
[13] *Íd.*, págs. 287-295.
[14] *Íd.*, págs. 2-8.
[15] *Íd.*, págs. 297-303.

Por su parte, el 6 de febrero de 2025, Mortgage Assets presentó el *Alegato de la Recurrida*. En síntesis, adujo que los emplazamientos fueron diligenciados conforme a derecho, y que no actuó de manera frívola ni temeraria para que se justificara la imposición de sanciones.

Con el beneficio de la comparecencia escrita de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

## A. Certiorari

El recurso de *Certiorari* es un mecanismo procesal que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Distinto al recurso de apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de C*ertiorari* de manera discrecional. *García v. Padró,* 165 DPR 324, 334 (2005). Sin embargo, tal discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres González v. Zaragoza Meléndez*, supra, pág. 847.

En específico, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, a saber:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones

sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra*, este tribunal intermedio procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, págs. 59-60, 215 DPR ___ (2025). La referida Regla establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*, a saber:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd.*

Cabe precisar que nuestro Tribunal Supremo ha expresado que, de ordinario, el tribunal revisor sólo intervendrá con las

facultades discrecionales de los foros primarios en circunstancias extremas y cuando se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022).

Por tanto, la denegatoria a expedir un recurso discrecional responde a la facultad de este tribunal intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia y no implica la ausencia de error en el dictamen recurrido ni una adjudicación en los méritos. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

En lo que respecta al caso de marras, la correcta consecución de la justicia necesariamente conlleva reconocer a los juzgadores de los foros primarios un amplio margen de deferencia respecto al ejercicio de sus facultades adjudicativas dentro del proceso que dirigen. Dado a eso, y sin apartarse de los preceptos pertinentes al funcionamiento del sistema judicial, el adjudicador concernido está plenamente facultado para conducir el proceso que atiende conforme le dicte su buen juicio y discernimiento, siempre al amparo del derecho aplicable. *In re Collazo I,* 159 DPR 141, 150 (2003). En consonancia con ello, nuestro más Alto Foro ha expresado en *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que los tribunales apelativos no "deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto".

**-III-**

En el presente caso, el peticionario alegó que el Tribunal de Primera Instancia incidió al no desestimar el caso ni imponerle sanciones al recurrido. Sostuvo que, al ser nulos los emplazamientos diligenciados anteriormente y haber vencido el término de ciento veinte (120) días sin emplazar a las partes, procedía la desestimación sin perjuicio, conforme a lo esbozado en la Regla 4.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 4.3. Además, el señor Pietri Vélez arguyó que, al residir en la propiedad objeto de la ejecución, y conforme al Artículo 3 de la *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, Ley Núm. 184 del 17 de agosto de 2012, 32 LPRA sec. 2882, se debió llevar a cabo una vista o un acto de mediación previo a dictar la referida sentencia. A pesar de reconocer que el Foro Primario fue leniente al relevar la *Sentencia en Rebeldía*, insistió en que se debió haber desestimado el caso o, como mínimo, sancionar al recurrido.

Por otro lado, el recurrido negó que los emplazamientos diligenciados fuesen insuficientes, pues arguyó cumplió con las exigencias de la Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V, R.4.6. Además, sostuvo que los miembros de las sucesiones fueron debidamente acumulados, por lo que procedía sustituir el nombre del señor Pietri Vélez, lo cual se autorizó por el Foro de Instancia al permitir la enmienda de la demanda. Argumentó que no era necesaria la desestimación, pue la *Resolución* recurrida logró la acumulación de los herederos como partes indispensables para garantizar su debido proceso de ley. Por último, se opuso a la imposición de sanciones, pues adujo que, durante el pleito, no actuó de forma temeraria ni frívola.

Evaluados los planteamientos de ambas partes, así como el derecho aplicable, colegimos que no existe criterio jurídico que

amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Entendemos que el Foro *a quo* no incurrió en error de derecho ni abuso de discreción que, de no atenderse por esta Curia, resultaría en un irremediable fracaso a la justicia.

Surge del expediente que el Foro de Instancia reconoció que, tanto el peticionario, como los dos (2) hijos del causante Roberto Aponte Matos, eran partes indispensables que debían ser acumuladas en el pleito. Por lo cual, relevó la *Sentencia en Rebeldía* e indicó que permitiría la enmienda a la Demanda para incluir los nombres correctos de los herederos antes de desestimar el caso. Igualmente, el Tribunal explicó que, luego de que estos contestaran el pliego, se referiría el caso a mediación conforme a lo dispuesto en nuestro ordenamiento jurídico. Incluso, de los autos emana que, dicha demanda enmendada fue presentada por Mortgage Assets.

De esta manera, no surge que el Tribunal de Primera Instancia haya actuado de manera arbitraria, caprichosa, en abuso de su discreción o mediante la comisión de algún error que justifique nuestra intervención para sustituir el criterio del Foro Primario. Es nuestro criterio que, al permitir la enmienda del pliego, así como la expedición de nuevos emplazamientos, el Foro *a quo* actuó conforme al principio de la economía procesal que promueven las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 1.

En vista de ello, tampoco hallamos criterio alguno bajo la Regla 40 del Reglamento del Tribunal De Apelaciones que nos mueva a variar las determinaciones del Foro primario. Así las cosas, denegamos la expedición del auto de *Certiorari.*

**-IV-**

Por los fundamentos previamente expuestos, **se deniega la expedición** del auto de *Certiorari.*

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones