Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| LUIS E. VELÁZQUEZ PÉREZ<br><br>Peticionario<br><br>v.<br><br>YISSEL BATISTA PACHECO<br><br>Recurrida | TA2025CE00619 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2022RF00104 Consolidado con CA2022RF00226<br><br>Sobre: Relaciones Filiales y Revisión de Pensión |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de noviembre de 2025.

Comparece ante nos Luis E. Velázquez Pérez ("señor Velázquez Pérez" o "Peticionario") mediante *Escrito de Certiorari* presentado el 15 de octubre de 2025. Nos solicita la revocación de la determinación del Tribunal de Primera Instancia, Sala Superior de Carolina ("foro primario" o "tribunal *a quo*") emitida el 15 de septiembre de 2025, notificada al próximo día. Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* una solicitud presentada por el Peticionario, a los fines de que las partes de epígrafe y sus hijos menores de edad fueran evaluados por la Dra. Carol Romey.

Por los fundamentos que expondremos a continuación, **denegamos** el auto de *certiorari* presentado.

## I.

El trámite procesal del caso de epígrafe dio inicio el 16 de febrero de 2022, cuando el señor Vázquez Pérez presentó *Demanda* contra la señora Yissel Batista Pacheco ("señora Batista Pacheco" o

"Recurrida") sobre relaciones filiales y revisión de pensión alimentaria, en relación a los dos (2) hijos menores de edad procreados con esta.[1]

Tras múltiples trámites procesales, y luego de considerar dos (2) informes sociales[2] presentados por las trabajadoras sociales Carmen Sosa Fonseca y Emely Abreu Sibilia, el 22 de enero de 2024, el tribunal *a quo* dictó *Sentencia.*[3] En lo atinente, determinó que la señora Batista Pacheco mantendría la custodia provisional de los menores y que las relaciones paternofiliales se llevarían a cabo telefónicamente, toda vez que el Peticionario residía en Estados Unidos. Adicionalmente, ordenó al señor Velázquez Pérez a presentar un informe sobre *home study* en un término de treinta (30) días.

Posteriormente, el 24 de enero de 2024, el Peticionario instó *Moción en Solicitud de Reconsideración en cuanto a la Orden para un Informe de "Home Study".*[4] En esta, alegó que no contaba con una residencia permanente en esos momentos, por lo que podría presentar el informe en una fecha posterior.

En vista de ello, el 24 de abril de 2024, notificada el 29 de abril de 2024, el tribunal *a quo* emitió *Orden* mediante la cual concedió al señor Velázquez Pérez un término de treinta (30) días, contados a partir del 20 de abril de 2024, para que presentara el referido estudio.[5] El foro primario precisó que tenía "que evaluar las condiciones reales actuales de la vivienda y los servicios donde los menores residirán al momento de tomar la determinación"[6]. Por tanto, estimó que el estudio resultaba necesario.

---

[1] Véase, Sistema Unificado de Manejo y Administración de Casos del foro primario (SUMAC TPI), Entrada 1.
[2] Véase, SUMAC TPI, Entrada 126, Anejo 1 y Entrada 239, Anejo 1.
[3] Véase, SUMAC TPI, Entrada 254.
[4] Véase, SUMAC TPI, Entrada 257.
[5] Véase, SUMAC TPI, Entrada 258.
[6] *Íd.*

Más adelante, el 13 de marzo de 2024, el señor Velázquez Peña instó *Moción Informativa sobre Nueva Estancia de la Parte Demandante*.[7] En síntesis, notificó al tribunal *a quo* que estaría mudándose formalmente a Portsmouth, New Hampshire, a partir del 15 de junio de 2024, por un periodo mínimo de dos (2) años.

Ante ese cuadro, el 25 de abril de 2024, notificada el día 29 del mismo mes y año, el tribunal *a quo* emitió *Orden*[8], en la cual dispuso lo siguiente:

> En el presente caso se han presentado dos informes provisionales relacionados a la custodia de los menores. Una de las razones para no presentar los informes de manera final es que el demandante no ha podido presentar un estudio de su hogar.
>
> Conforme a la moción presentada, el demandante espera que el 15 de junio de 2024, se establezca en Portsmouth, NH por dos años. No existiendo al presente, una residencia fija que evaluar, el Tribunal dicta resolución acogiendo las recomendaciones del informe de 21 de noviembre de 2023 y, según modificadas en la vista de 8 de enero de 2024.
>
> Una vez el demandante fije su lugar de residencia, deberá presentar una nueva solicitud de custodia acompañada de un informe social del hogar (home study) y se procederá a revaluar el caso.

Así las cosas, el 1 de julio de 2025, el señor Velázquez Pérez presentó *Moción Solicitando Custodia Monoparental*.[9] En esta, sostuvo que la obtención de la custodia monoparental y el traslado de los menores a Estados Unidos representaba "una mejor opción y un mejor estilo de vida para ellos".[10] Asimismo, aseguró que podía proveerles mejor educación, vivienda y condiciones de salud. De modo que, solicitó al foro primario que le concediera la custodia monoparental de los menores.

Conviene señalar que, junto a su moción, el Peticionario acompañó un *home study* relacionado a una propiedad ubicada en Rochester, New Hampshire.[11]

---

[7] Véase, SUMAC TPI, Entrada 269.
[8] Véase, SUMAC TPI, Entrada 271.
[9] Véase, SUMAC TPI, Entrada 342.
[10] *Íd.*, pág. 2.
[11] Véase, SUMAC TPI, Entrada 342, Anejo 1.

El 7 de julio de 2025, el tribunal *a quo* concedió un término de veinte (20) días a la Recurrida para contestar la moción.[12]

En cumplimiento, el 2 de agosto de 2025, la señora Batista Pacheco instó *Moción de Desacato y en Cumplimiento de Orden.*[13] En lo pertinente, manifestó que "[n]o se sabe si el informe se presentó para impugnar el Informe Social de la Unidad Social del 21 de noviembre de 2023 o qué se pretende con el mismo".[14] En ese sentido, indicó que el periodo para impugnar el informe social había transcurrido, por lo que el *home study* fue presentado a destiempo, y la solicitud de custodia debía entenderse renunciada.

De otro lado, arguyó que el señor Velázquez Pérez partía de misión militar por largos periodos de tiempo, de modo que los menores se quedarían bajo el cuidado de su esposa, quien carecía de patria potestad sobre ellos. Así pues, arguyó que ello no resultaba beneficioso para los menores. Asimismo, esgrimió que la Unidad Social no había emitido ningún informe posterior al del 21 de noviembre de 2023, ni se habían realizado las evaluaciones psicológicas y psiquiátricas que había ordenado el foro primario para evaluar el cambio de custodia.

Evaluados los planteamientos de las partes, el 1 de agosto de 2025, notificada el 4 de agosto de 2025, el tribunal *a quo* emitió *Orden.*[15] En virtud de esta, dispuso que las partes serían referidas para un estudio social y evaluaciones psicológicas. Así pues, en igual fecha, el foro primario dictó *Orden a la Unidad Social.*[16]

Posteriormente, el 5 de agosto de 2025, la señora Batista Pacheco incoó *Oposición a Mociones 356 y 357 del Demandante*, en

---

[12] Véase, SUMAC TPI, Entrada 344.
[13] Véase, SUMAC TPI, Entrada 353.
[14] *Íd.*, pág. 3.
[15] Véase, SUMAC TPI, Entrada 354.
[16] Véase, SUMAC TPI, Entrada 355.

la que reprodujo los mismos argumentos esbozados en su moción del 2 de agosto de 2025.[17]

Luego, el 15 de septiembre de 2025, el Peticionario presentó *Moción Urgente Solicitando Custodia de Emergencia Informando Alineación Parental de la Madre, Moción Informando Perito y Solicitud de Evaluación Urgente.*[18] A través de esta, afirmó que la señora Batista Pacheco estaba incurriendo en conducta de alienación parental, provocando daños significativos a los menores. En apoyo a su argumento, relató una serie de eventos que, a su juicio, evidenciaban la conducta de la Recurrida. A esos efectos, reiteró las alegaciones contenidas en su solicitud de custodia monoparental.

Por otra parte, informó que había contratado los servicios de la doctora Carol Romey a los fines de que realizara una evaluación a todas las partes del caso, incluyendo a los menores.

A tenor de lo anterior, el señor Velázquez Pérez solicitó, entre otros, que: (1) se emitiera una orden para que la señora Batista Pacheco desistiera inmediatamente de la alegada conducta de alienación parental y, (2) se ordenara a que las partes, en especial los menores, fuesen evaluados por la Dra. Carol Romey.

En igual fecha, notificada al próximo día, el tribunal *a quo* declaró *No Ha Lugar* la solicitud del Peticionario con respecto a la evaluación de la Dra. Carol Romey.[19]

En desacuerdo, el 18 de septiembre de 2025, el señor Velázquez Pérez instó *Moción de Reconsideración.*[20] En esta, sostuvo que la alienación parental solo podía acreditarse mediante prueba pericial, de modo que solicitó al foro primario que reconsiderara su determinación. Añadió que, en caso de que el tribunal *a quo* no

---

[17] Véase, SUMAC TPI, Entrada 358.
[18] Véase, SUMAC TPI, Entrada 374.
[19] Véase, SUMAC TPI, Entrada 375.
[20] Véase, SUMAC TPI, Entrada 376.

deseara escuchar a la Dra. Romey, se designara a un perito para que los menores fueran evaluados.

También el 18 de septiembre de 2025, notificada al próximo día, el foro primario emitió *Orden* en la que declaró *No Ha Lugar* la solicitud de reconsideración instada por el Peticionario.[21]

Inconforme aún, el 15 de octubre de 2025, el señor Velázquez Pérez instó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al no tomar en consideración los hechos esbozados en nuestra Moción Urgente Solicitando Custodia de Emergencia e Informando Alineación Parental... (véase entra sumac #374), sin tener la postura tan siquiera de la parte recurrida y haberla declarado de plano no ha lugar al igual que nuestra moción de reconsideración. Dicha decisión fue tomada de forma expedita y sin ningún tipo de razonamiento o discernimiento judicial.

El 20 de octubre de 2025, esta Curia emitió *Resolución* mediante la cual le concedió a la Recurrida hasta el 27 de octubre de 2025 para que presentara su postura. Oportunamente, el 25 de octubre de 2025, la señora Batista Pacheco presentó *Oposición a que se Expida Auto de Certiorari*. Ese mismo día, la señora Batista Pacheco incoó *Moción para Presentar Documentos del Expediente que el Sistema Rechaz[ó] al Presentar la Oposición al Certiorari,* la cual se declara *Ha Lugar*.

Contando con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.
### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718

---

[21] Véase, SUMAC TPI, Entrada 377.

(2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari. Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019).

### B. Manejo del Caso

El efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *BPPR v. SLG*

*Gómez-López*, 213 DPR 314, 333-334, (2023) citando a *In re Collazo I*, 159 DPR 141, 150 (2003). Es por ello, que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd.*

Cónsono con lo anterior el Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011). Como regla general, los foros revisores no intervendrán con el manejo del caso ante la consideración del foro primario. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Siendo así, el Tribunal Supremo ha manifestado, que los tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020). El ejercicio adecuado de la discreción judicial se relaciona de manera estrecha con el concepto de razonabilidad. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021).

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, esta Curia determina que no se han producido las circunstancias que exijan nuestra intervención. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, el Peticionario no ha demostrado que el foro primario se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la

justicia. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

**IV.**

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones