ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| NATURALIA, LLC<br><br>Recurrida<br><br>v.<br><br>DERMOGALENIC EXPERTS PUERTO RICO, LLC; **CARLOS PIAR DE LLOVIO; STELIOS PJR, LLC**<br><br>Peticionarios | KLCE202401069 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil. Núm. SJ2022CV06999<br><br>Sobre: Entredicho provisional; *Injunction* prelimirar; Sentencia declaratoria; Acción derivativa; Cobro de dinero; Daños |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Lebrón Nieves, el Juez Rivera Torres y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de enero de 2026.

Compareció el Sr. Carlos Piar de Llovió (en adelante, "el señor Piar de Llovió") y Stelios PJR, LLC (en adelante, "Stelios") en conjunto parte peticionaria mediante recurso de *Certiorari*. Nos solicitaron la revocación de la *Sentencia Parcial* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "foro primario"), el 15 de abril de 2024. En ese dictamen, el foro primario declaró *Ha Lugar* el remedio de Interdicto Preliminar.

Por los fundamentos que expondremos a continuación, **se deniega la expedición** del auto de *Certiorari*.

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Giselle Romero García.

Número Identificador

RES2026 _____

**-I-**

El 5 de agosto de 2022, Naturalia, LLC (en adelante, "Naturalia" o "recurrido") instó *Demanda Jurada de Injunction y Sentencia Declaratoria* sobre entredicho provisional, injunction, sentencia declaratoria, acción derivativa, cobro de dinero y daños, contra Stelios, el señor Piar de Llovió y Dermogalenic Experts Puerto Rico, LLC (en adelante, "Dermogalenic").[2] Alegó, en síntesis, que sufrió daños por negligencia y actuaciones por el desempeño de las funciones del señor Piar de Llovió como Director Ejecutivo. Entre los alegados daños, sostuvo que el Sr. Piar de Llovió dejó una deuda substancial y desproporcionada a las necesidades de Dermogalenic, por haber gestionado un préstamo por la cantidad de $451,000.00 sin la debida autorización de los socios de la corporación. Por lo cual, solicitó que el foro primario emitiera un entredicho provisional y un injunction preliminar y permanente en contra de la parte demandada para impedir que el señor Piar de Llovió continuara actuando en perjuicio de Dermogalenic. Solicitó, además, que se acatara la destitución del señor Piar de Llovió y en consecuencia, se ordenara al Banco Popular de Puerto Rico a congelar la cuenta de Dermogalenic y cualquier otra donde el señor Piar de Llovió hubiese capitalizado con dinero de esta entidad. Finalmente, solicitó que se emitiera un injunction al señor Piar de Llovió ordenándole depositar la cantidad de $451,000.00.

Posteriormente, el 7 de noviembre de 2022, el señor Piar de Llovió y Stelios presentaron *Contestación a Demanda*.[3] Entre sus defensas afirmativas, argumentaron que la reclamación de Naturalia era puramente económica, por lo que no procedía dictar un injunction. Agregaron que Naturalia incumplió con disposiciones de la Ley Núm. 164-2009, según enmendada, conocida como Ley

---

[2] Apéndice del peticionario, págs. 626-651.
[3] *Id.*, págs. 346-354.

General de Corporaciones, 14 LPRA sec. 3501 *et seq.*, por haber destituido ilegalmente al señor Piar de Llovió de su puesto como director Ejecutivo de Dermogalenic. Por lo cual, solicitaron la desestimación de la demanda.

Tras varias incidencias procesales, el 15 de abril de 2024, el foro primario emitió la *Sentencia Parcial*[4] aquí recurrida.[5] Mediante esta, se declaró *Ha Lugar* la demanda de epígrafe únicamente en lo concerniente al remedio de interdicto preliminar. Además, se ordenó al señor Piar de Llovió a entregar todo lo relacionado a la administración y operación de Dermogalenic desde su puesto como director ejecutivo, así como abstenerse a acceder con las cuentas del Banco Popular de Puerto Rico en controversia. A su vez, estableció 94 determinaciones de hecho, entre las que destacamos:

1. El 23 de marzo de 2018 se otorgó Poder Especial a favor del Sr. Piar, Sr. Iván Hernández Sanz, y Sr. José Luis García Pons, para crear la estructura corporativa de Dermogalenic Puerto Rico Experts, ejecutar la inversión en Puerto Rico, representar a la sociedad, y realizar las gestiones necesarias para el mejor beneficio de la inversión.

[...]

4. Las partes acordaron que el primer Director Ejecutivo de Dermogalenic sería el Sr. Piar.

[...]

11. El 7 de mayo de 2018 se registró en el Departamento de Estado la Compañía de Responsabilidad Limitada Naturalia, LLC.

12. El 7 de mayo de 2018 se registró en el Departamento de Estado la Compañía de Responsabilidad Limitada Stelios PJR, LLC.

13. El 9 de mayo de 2018 se registró en el Departamento de Estado la Compañía de Responsabilidad Limitada Dermogalenic Experts Puerto Rico LLC.

[...]

20. No fue hasta que los demandados produjeron el AO firmado durante las vistas de Interdicto Preliminar que Naturalia supo de la existencia del Acuerdo Operacional, alegadamente firmado por el Sr. Piar, el 8 de mayo de 2018.

---

[4] Mediante resolución emitida el 30 de agosto de 2024, el foro primario rectificó el título otorgado al dictamen emitido el 15 de abril de 2024, determinándolo como una Resolución.
[5] Apéndice del peticionario, págs. 86-111.

21. No existe documento alguno confirmando el envío a Naturalia del AO firmado por el Sr. Piar.

22. El Sr. Piar nunca compartió con Naturalia la versión firmada del AO. Firmar el AO en representación de Naturalia sin haberlo compartido con esta, denota una falta de transparenca hacia sus socios y Dermogalenic.

23. El Sr. Piar carecía de autoridad para aceptar a nombre de Naturalia un Acuerdo Operacional como el del 8 de mayo de 2018, que no incorporó el pacto de las partes y las respectivas participaciones de Naturalia, Stelios y la Sra. Waked.

24. La pretensión del Sr. Piar en firmar un AO que desvirtuaba el acuerdo al que los tres socios llegaron el 4 de mayo de 2018, es contrario e incompatible con su deber de lealtad hacia Dermogalenic, Naturalia y las Sra. Waked.

[...]

28. El Sr. Piar no cumplió oportunamente con sus obligaciones bajo el préstamo, y le representó a Naturalia un balance de deuda adquirida incorrecto.

[...]

31. El 20 de abril de 2020, el Sr. Piar, solicitó a nombre de Dermogalenic un préstamo con la Small Business Administration (en adelante "SBA") por la suma de $175,000.

32. El proceso de tramitación del préstamo original quedó interrumpido y dos años más tarde, el Sr. Piar recibió una notificación de la SBA sobre el préstamo aprobado por la cantidad de $451,000.00.

33. El Sr. Piar testificó desconocer la justificación para el aumento en la cuantía.

34. Al solicitar el préstamo inicial de la SBA, el 20 de abril de 2020, el Sr. Piar le certificó ser el dueño único (100% "ownership") de Dermogalenic.

35. Igualmente, el Sr. Piar le certificó a la SBA ser dueño único (100% ownership) como parte de las solicitudes del "Payment Protection Program".

36. En esas solicitudes, también certificó que Dermogalenic contaba con dos (2) empleados.

37. No obstante, al cuestionársele en contrainterrogatorio sobre las transferencias de fondos desde la cuenta de Dermogalenic a la suya personal y a la de Stelios, declaró que Dermogalenic tenía siete (7) empleados.

[...]

41. El Sr. Piar admitió que no le notificó a Naturalia ni a Geraldine Waked Tovar sobre la solicitud y aprobación del préstamo de $451,000.00 con la SBA.

42. Desde abril de 2022, Naturalia comenzó a percatarse de diferencias e inconsistencias significativas en la valoración y reporte del inventario que se le proveyó al Sr. Piar para ser comercializado en Puerto Rico.

43. Desde el 19 de abril de 2022, Naturalia le solicitó al Sr. Piar acceso a todas las cuentas de Dermogalenic en BPPR para poder realizar movimientos, puesto que solo tenían acceso a visualizar los movimientos del capital.

44. De los estados de BPPR para las cuentas de Dermogalenic, Stelios y la personal del Sr. Piar surge que, contemporáneo con el depósito de los $450,900.00 en la cuenta de Dermogalenic, el Sr. Piar realizó múltiples transferencias de estos activos de Dermogalenic a su cuenta de banco personal y a la de Stelios.

[...]

49. Dichas transferencias no fueron para beneficio de Dermogalenic.

[...]

51. No es correcta la aseveración del Sr. Piar que los fondos de Dermogalenic que recibió de la SBA están intactos, ya que, están pignorados y constituyen la garantía de la línea de crédito de Stelios por $50,000.00 y el préstamo de BPPR de $310,000.00.

52. El Sr. Piar no tenía justificación válida alguna para endeudar a Dermogalenic con el préstamo de $310,000.00, cuando contaba con los fondos de SBA que fueron solicitados y desembolsados para enfrentar las obligaciones de Dermogalenic.

[...]

63. Desde el 16 de mayo de 2022 al 8 de junio de 2022 Naturalia le solicitó en múltiples ocasiones al Sr. Piar los estados financieros de Dermogalenic correspondientes a los meses de abril y mayo de 2022, los cuales no fueron producidos a tiempo.

64. Durante este periodo fue que el Sr. Piar realizó las transferencias de la cuenta de Dermogalenic a la suya y la de Stelios.

65. El 16 de mayo de 2022, Naturalia también le solicitó al Sr. Piar la información sobre los accesos totales a la cuenta corporativa de Dermogalenic en BPPR, a la cual no podía acceder.

66. El Sr. Piar no le proveyó a Naturalia los accesos a las cuentas de banco de Dermogalenic.

[...]

88. El Sr. Piar no fue citado ni notificado de la reunión en donde Naturalia y la Sra. Waked, contando con dos de los tres votos en Dermogalenic, tomaron la decisión de destituirlo como director ejecutivo.

[...]

90. El AO de Dermogalenic no provee el procedimiento para la destitución o remoción de su Director Ejecutivo, sino para su nombramiento.

91. La cláusula §6.2 del AO dispone que "[e]l DIRECTOR EJECUTIVO será nombrado por LAS PARTES."

[…]

94. El Sr. Piar se ha negado a acatar la determinación de la mayoría de los miembros con derecho al voto en Dermogalenic en entregar las riendas y todo lo relativo al cargo de Director Ejecutivo, afectando negativamente y de manera continuada la sana operación del negocio.

En desacuerdo, el señor Piar de Llovió presentó el 30 de abril de 2024, *Moción de Reconsideración al Amparo de la Regla 47 de Procedimiento Civil.*[6] Mediante la misma, sostuvo que la Sentencia Parcial debió ser intitulada como una Resolución Interlocutoria. Además, entre sus argumentos, sostuvo que el foro primario carecía de jurisdicción por entender que faltaba una parte indispensable.

Evaluadas las posturas de las partes, el foro primario emitió una *Resolución* el 3 de septiembre de 2024, únicamente a los efectos de rectificar el título otorgado al dictamen emitido el 15 de abril de 2024 determinando que dicha decisión era una Resolución.

En igual fecha, el foro primario emitió una *Resolución* notificada el 3 de septiembre de 2024.[7] En la misma, enmendó la *Sentencia Parcial* recurrida, a los efectos de indicar que en caso de que el señor Piar de Llovió necesitara acceder a alguna de las cuentas, en particular, a su cuenta personal, debía solicitarlo oportunamente ante el foro primario.

Inconforme con lo anteriormente resuelto, el 3 de octubre de 2024, la parte peticionaria compareció ante nos mediante el presente recurso de *certiorari* y expuso los siguientes señalamientos:

Erró el Tribunal de Primera Instancia en determinar que no procedía el planteamiento jurisdiccional de falta de parte indispensable levantado por los demandados previo a la vista de injunction preliminar en su fondo al entender que la alegada co-dueña de Dermogalenic Experts PR, LLC, Gerladine Waked Tovar no tenía que estar incluida en el pleito.

Erró el Tribunal de Primera Instancia al ordenar un interdicto preliminar para el cual la parte demandante no probó todos los elementos necesarios para tal determinación al ser los daños alegados puramente económicos.

---

[6] Apéndice del peticionario, págs. 47-85.
[7] *Id.*, págs. 5-30.

Erró el Tribunal de Primera Instancia al emitir 94 determinaciones de hecho las cuales no se sustentan con la mayoría con la prueba desfilada y por entender que el Acuerdo Operacional sometido por la parte demandante es el que impera en la operación de la corporación Demogalenic Experts PR, LLC, a pesar de que el mismo no consta firmado por ninguna parte, vis a vis el Acuerdo Operacional producido por el demandado el cual fuera autenticado por su autor y que cuenta con la firma del Director Ejecutivo de la corporación.

-II-

## A. Certiorari

El recurso de *Certiorari* es un mecanismo procesal que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Distinto al recurso de apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de C*ertiorari* de manera discrecional. *García v. Padró,* 165 DPR 324, 334 (2005). Sin embargo, tal discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres González v. Zaragoza Meléndez,* supra, pág. 847.

En específico, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, a saber:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones **cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar

la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

*Id.* (Énfasis suplido).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* este tribunal intermedio procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, págs. 59-60, 215 DPR ___ (2025). La referida Regla establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*, a saber:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B.   Si la situación de hechos planteada es la más indicada para el análisis del problema.
> C.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> D.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> E.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*Id.*

Cabe precisar que nuestro Tribunal Supremo ha expresado que —para el buen funcionamiento del sistema judicial y la rápida disposición de los litigios— el juzgador de Instancia tiene gran flexibilidad y discreción para atender y conducir los asuntos litigiosos ante su consideración. *In re Collazo I,* 159 DPR 141, 150 (2003). Esto es, el adjudicador del foro primario tiene plena facultad para conducir el proceso judicial que atiende de acuerdo con su buen juicio y discernimiento al interpretar el derecho aplicable. Dado a eso, la norma general es que el tribunal revisor sólo

intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y cuando se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022).

Por tanto, la denegatoria a expedir un recurso discrecional responde a la facultad de este tribunal intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia y no implica la ausencia de error en el dictamen recurrido ni una adjudicación en los méritos. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

**-III-**

En el presente caso, la parte peticionaria alegó que el foro primario incidió al determinar que no procedía el planteamiento de falta de parte indispensable. Adujo, además, que el foro primario erró al ordenar un interdicto preliminar sin probar todos los elementos para conceder ese remedio y por emitir 94 determinaciones de hecho que no estaban sustentadas con la prueba desfilada.

Sin embargo, tras examinar con detenimiento el expediente ante nuestra consideración, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el foro primario. En la resolución recurrida, el foro primario entendió que había razones para destituir al señor Piar de Llovió como director ejecutivo de la corporación. Igualmente, el foro primario entendió que Naturalia estaba facultaba para instar la presente acción judicial para valer sus derechos y proteger sus intereses ante las actuaciones de la parte peticionaria. Por ello, entendió pertinente

emitir una orden de injunction preliminar para evitar un fracaso para la entidad jurídica.

Por todo lo anterior, entendemos que el foro *a quo* no incurrió en error de derecho ni abuso de discreción que, de no atenderse por este tribunal revisor, resultaría en un irremediable fracaso a la justicia.

Así pues, concluimos que no se configura ninguna de las circunstancias que justifican la expedición del auto bajo los fundamentos de la Regla 40 de nuestro Reglamento. En fin, no encontramos razones para expedir el auto y revisar la determinación recurrida.

**-IV-**

Por los fundamentos previamente expuestos, se **deniega la expedición** del auto de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones