Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROBERTO RODRÍGUEZ PARRILLA<br><br>Recurrido<br><br>v.<br><br>RAFAEL RODRÍGUEZ PARRILLA<br><br>Peticionario | TA2025CE00919 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2021CV02900 (504)<br><br>Sobre: División o Liquidación de la Comunidad de Bienes Hereditarios |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera

Álvarez Esnard, jueza ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de febrero de 2026.

Comparece ante nos, el señor Rafael Rodríguez Parrilla ("Rafael" o "el Peticionario") mediante *Solicitud de Certiorari* presentada el 18 de diciembre de 2025. Nos solicita la revisión de la *Orden* emitida y notificada el 18 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "tribunal *a quo*"). En virtud del aludido dictamen, el foro primario concedió al Peticionario y a su hermano, el señor Roberto Rodríguez Parrilla ("Roberto" o "el Recurrido") un término de veinte (20) días para acordar la contratación de un contador partidor, para que realice la partición y liquidación de los bienes hereditarios.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

**I.**

Conforme surge del expediente, el 13 de mayo de 2021, Roberto, radicó *Demanda* sobre división o liquidación de la

Comunidad de Bienes Hereditarios contra su hermano, Rafael.[1] Consta que, este último, funge como albacea testamentario del caudal relicto del Dr. Rafael Rodríguez ("Dr. Rodríguez"), padre adoptivo de ambos, quien falleció en el año 2013.[2] Como parte de sus alegaciones, el Recurrido indicó que el testamento obligaba a liquidar la herencia en un término de cuatro (4) años. Establecido lo anterior, estimó que el caudal hereditario asciende a una suma de cuatro millones, seiscientos cinco mil dólares ($4,605,000.00). No empece a lo antes expuesto, Roberto imputó a Rafael haber sido negligente en su función de albacea testamentario, y a consecuencia de ello, había ocasionado una disminución del caudal hereditario estimada en no menos de quinientos mil dólares ($500,000.00).

Ante este cuadro, el Recurrido solicitó lo siguiente: 1) la restitución de la pérdida de quinientos mil dólares ($500,000.00); 2) compensación por daños emocionales valorados en no menos de doscientos cincuenta mil dólares ($250,000.00); 3) compensación por daños económicos valorados en no menos de doscientos cincuenta mil dólares ($250,000.00); 4) el relevo de Rafael como albacea y el nombramiento de un sustituto escogido por la corte; 5) división de los bienes de la viuda del Dr. Rodríguez y madre adoptiva de las partes, la señora María Jesús Parrilla Sánchez ("señora Parrilla Sánchez") para proceder con la liquidación de su herencia;[3] 6) liquidación de la herencia del Dr. Rodríguez; 7) adelanto de veinticinco mil dólares ($25,000.00) para adecuar la residencia de la señora Parrilla Sánchez al estado necesario para tratar sus condiciones de salud y movilidad, y para mantener sus piezas de

---

[1] Véase, Entrada 1 del expediente del caso SJ2021CV02900 en el Sistema Unificado de Manejo y Administración de Casos del foro primario (SUMAC TPI).

[2] *Íd.*, págs. 1-2. Según reza la *Demanda*, el matrimonio compuesto por el Dr. Rafael Rodríguez y la Sra. María Jesús Parrilla Sánchez adoptó al Peticionario en el año 1965 y al Recurrido en el año 1967. El Recurrido expresó que al enterarse que eran hijos adoptivos de la pareja quedaron grandemente afectados. Según indicó, esta noticia les fue comunicada en el año 1996.

[3] *Íd.*, pág. 5. Según reza la *Demanda*, en el año 2020, la señora Parrilla Sánchez fue declarada incapaz y la Lcda. Milagros Rivera Guadarrama fue nombrada como su tutora.

arte; 8) adelanto de herencia de veinticinco mil dólares ($25,000.00) tanto para el Peticionario como para el Recurrido; 9) solicitud para que el nuevo albacea presente la declaratoria de herederos y la planilla de caudal relicto para tramitar la venta de propiedades de la sucesión y liquidar la herencia; 10) pago por mitad de la cantidad de sesenta y ocho mil ochocientos cinco dólares con cincuenta centavos ($68,805.50) por gastos del cuido de la señora Parrilla Sánchez asumidos por el Recurrido al momento de la presentación de la reclamación y que indicó continúan acumulándose mensualmente; 11) asignación de salario por su trabajo de cuidador de su madre y orden de pago mensual y  12) salario a la tutora de no menos de ciento cincuenta ($150.00) por hora.

Luego de ciertos incidentes procesales, el 24 de junio de 2021, el Peticionario presentó *Moción Solicitando Desestimación.*[4] Esbozó que la reclamación instada no incluyó a la señora Parrilla Sánchez y a su tutora, la Lcda. Milagros Rivera Guadarrama ("Lcda. Rivera Guadarrama"). En consecuencia, solicitó la desestimación del caso al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V., R. 10.2, por dejar de acumularlas como partes indispensables en el caso.

Subsiguientemente, el 19 de julio de 2021, la señora Parrilla Sánchez, por conducto de su tutora, la Lcda. Rivera Guadarrama, presentó escrito intitulado *Moción en Torno a Parte Indispensable.*[5] En esencia, aclaró que es tutora de la señora Parrilla Sánchez, más no su defensora legal (*guardiam at litem*). Al amparo de tal delegación, expresó que procede de su parte comparecer ante la Sala de Familia para dilucidar el asunto de representación legal de la señora Parrilla Sánchez, por tanto, solicitó prórroga para presentar su oposición a la desestimación incoada.

---

[4] Véase SUMAC TPI, Entrada 5.
[5] Véase SUMAC TPI, Entrada 9.

Luego de varios trámites procesales, el 20 de enero de 2022, el Recurrido presentó *Moción Solicitando Orden*.[6] En su escrito, notificó al foro primario el fallecimiento de la señora Parrilla Sánchez, por lo que presentó un Proyecto de Orden para realizar el inventario e inspección de los bienes relictos.

Cónsono con lo anterior, el 24 de marzo de 2022, el Recurrido presentó *Segunda Demanda Enmendada*.[7] En ella, destacó que, había sido nombrado albacea de la señora Parrilla Sánchez por virtud del testamento otorgado por ésta. Añadió, que la extinta sociedad ganancial compuesta por el Dr. Rodríguez y la señora Parrilla Sánchez no había sido dividida. En síntesis, el Recurrido solicitó la división y la liquidación de la comunidad hereditaria.

En respuesta, el Peticionario presentó *Contestación a Segunda Demanda Enmendada*.[8] Entre otras cosas, solicitó que se procediera con el descubrimiento de prueba para calcular y dividir, tanto el caudal del Dr. Rodríguez, como el de la señora Parrilla Sánchez. También, incoó *Reconvención* a los fines de reclamar por el deterioro y desaparición de ciertos activos que estaban a cargo del Recurrido, una vez se pudiera determinar el estado de los bienes.

Luego de varias incidencias procesales, mediante *Orden*, emitida el 29 de septiembre de 2023 y notificada el mismo día, el foro primario señaló las fechas para la celebración del juicio en su fondo.[9]

Así las cosas, el 31 de octubre de 2023, el foro primario emitió y notificó *Sentencia*.[10] En la misma declaró *Ha Lugar* la demanda enmendada incoada por el Recurrido sobre la liquidación de comunidad de bienes hereditaria habida entre el Dr. Rodríguez y la señora Parrilla Sánchez y les concedió un término de veinte (20) días

---

[6] Véase SUMAC TPI, Entrada 40.
[7] Véase SUMAC TPI, Entrada 77.
[8] Véase SUMAC TPI, Entrada 86.
[9] Véase SUMAC TPI, Entrada 234.
[10] Véase SUMAC TPI, Entrada 253.

a las partes para que acuerden la contratación de un contable que funja como contador partidor. De igual forma, dispuso en su dictamen, que las alegadas donaciones realizadas a Roberto no eran colacionables.[11]

Inconforme con el dictamen, el 4 de enero de 2024, Rafael instó, *Recurso de Certiorari.*[12] En su escrito, el Recurrido impugnó el proceder del foro primario, particularmente en torno a que no consideró las solicitudes de enmiendas a la demanda presentadas, ni la petición de determinaciones de hechos adicionales. Cónsono con ello, arguyó que el tribunal *a quo* no conformó sus determinaciones de hechos a la prueba desfilada. Tras evaluar el recurso, el 18 de junio de 2024, esta Curia denegó el auto de *certiorari* instado en el caso KLCE202400018.

Luego de varias incidencias procesales, el 14 de febrero de 2025, el Peticionario presentó *Moción en Cumplimiento de Orden, Doc. #:372, y actualizando el inventario de bienes.*[13] Por su parte, el 24 de febrero de 2025, el Recurrido presentó *Moción solicitando orden para cierre de cuenta.*[14] Indicó que "el contenido cuaderno particional en cuanto a los activos no está en disputa, por lo cual este Honorable Tribunal lo puede acoger", aunque anotó al calce que está en desacuerdo con el valor otorgado a dos (2) bienes muebles: un vehículo Honda y una lavadora. Agregó que la mejor oferta que se reciba por las cuatro (4) propiedades inmuebles será el valor real de las propiedades.

Así las cosas, el 20 de febrero de 2025, notificada el 25 del mismo mes y año, el foro primario dictó *Resolución,*[15] en la cual aprobó el inventario y cuaderno particional presentado por el Peticionario.

---

[11] *Íd.*, págs. 17-20.
[12] Véase SUMAC TPI, Entrada 308. *Resolución* del caso KLCE202400018.
[13] Véase SUMAC TPI, Entrada 373.
[14] Véase SUMAC TPI, Entrada 379.
[15] Véase SUMAC TPI, Entrada 382.

Luego de múltiples mociones presentadas por las partes, el 14 de agosto de 2025, el foro primario, emitió y notificó *Orden*.[16] En ella, apercibió a las partes para que se abstuvieran de presentar mociones hasta tanto presentaran un contador partidor.

En respuesta, el 5 de noviembre de 2025, las partes incoaron una *Moción Conjunta en Torno a Órdenes Dictadas por el Tribunal, Docs.#: 499 y 500*.[17] Al amparo de esta, Rafael y Roberto expresaron estar de acuerdo en continuar con los trabajos de liquidación de activos de la comunidad hereditaria y se comprometieron en mantener al tribunal *a quo* sobre las transacciones.

Ulteriormente, el 11 de noviembre de 2025, el Peticionario presentó *Moción Solicitando Orden*.[18] En su escrito, Rafael indicó que Roberto vivía en una de las propiedades de la comunidad hereditaria sin pagar renta. De igual forma, señaló que las actuaciones posesorias del Recurrido fuerzan al Peticionario a permanecer en un estado de indivisión, al impedir la venta de la propiedad, proceso que ya se encontraba en trámites iniciales. Por tal conducta, el Peticionario suplicó que se le impusiera un canon de renta al Recurrido y que no se impidieran las gestiones asignadas a una corredora de bienes raíces o cualquier tercero para continuar la venta del inmueble.

Posteriormente, el 13 de noviembre de 2025, el Recurrido incoó escrito intitulado *Respuesta a la Moción Presentada en la Entrada #502*.[19] En su alegación, Roberto suscribió que vive en la única propiedad del caudal que no ha sido dividida. Por su interés en conservar el bien para sí, solicitó conocer la información sobre los fondos disponibles en las entidades bancarias con bienes hereditarios. Alegó que, al conocer dicha información, podría

---

[16] Véase SUMAC TPI, Entrada 488.
[17] Véase SUMAC TPI, Entrada 501.
[18] Véase SUMAC TPI, Entrada 502.
[19] Véase SUMAC TPI, Entrada 503.

determinar si cuenta con los fondos para extender una oferta a su hermano y adquirir la propiedad que actualmente habita. De no contar los fondos suficientes, el Recurrido expresó que firmaría el contrato con la corredora de bienes raíces para que continuaran los esfuerzos de la venta del inmueble.

Así las cosas, el 18 de noviembre de 2025, el foro primario, emitió y notificó *Orden.*[20] Por virtud de esta, el tribuna *a quo* dispuso lo siguiente:

> De la Sentencia dictada en el caso de autos se desprende expresamente que la Magistrada ordenó se nombrara un contador partidor, para ejecutar las funciones que las partes pretenden sean manejadas por el Tribunal. No surge del expediente electrónico que se le haya dado cumplimiento a la orden, que dispone como sigue: Se declara Ha Lugar la demanda enmendada sobre liquidación de comunidad de bienes hereditaria del causante Rafael Rodríguez Merced y María Jesús Parrilla Sánchez, y se les concede 20 días a las partes para que contraten un contable que funja como contador partidor por acuerdo, para que realice el cuaderno particional y proceda con la liquidación conforme con lo aquí resuelto y lo establecido en el testamento de Rafael Rodríguez Merced y María Jesús Parrilla Sánchez. Los honorarios del contador partidor será descontado como un pasivo del caudal hereditario de Rafael Rodríguez Merced y María Jesús Parrilla Sánchez. De las partes no llegar a un acuerdo sobre el contador partidor, deberán dentro de dicho término someter los nombres de las personas sugeridas y sus currículo in vita para ser considerado y nombrado por el tribunal.
>
> Por ende, el Tribunal ordena a las partes que muestren causa por la cual no se les deba imponer sanciones económicas, ante el incumplimiento de las partes con la orden para la contratación de un contador partidor. 10 días para cumplir. Se concede mismo término para que se cumpla con la orden arriba transcrita, que surge del último párrafo de la sentencia dictada en el caso, de modo que, por acuerdo, presenten el nombre del contador partidor que llevará a cabo la partición de la herencia. En caso de que las partes no logren un acuerdo, deberán presentar moción con 3 candidatos, para la selección aleatoria del Tribunal. Las partes se abstendrán de presentar mociones para que el Tribunal lleve a cabo actos que son propios de un contador partidor, bajo apercibimiento de sanciones.[21]

Inconforme, el 21 de noviembre de 2025, el Peticionario instó *Moción Solicitando Reconsideración de Órdenes, Docs.#: 507, 510 y 511.*[22] Al amparo de esta, reiteró lo solicitado en la moción conjunta

---

[20] Véase SUMAC TPI, Entrada 511.
[21] Véase SUMAC TPI, Entrada 511.
[22] Véase SUMAC TPI, Entrada 515.

del 11 de noviembre de 2025. En torno a su postura sobre el contador partidor, expresó:

10. Lo solicitado por el demandado sólo lo puede conceder el Tribunal. Un contador partidor no podría atender la controversia referente al apoderamiento de la PROPIEDAD por parte del demandante. Sí (sic) el demandante se niega a que se venda la propiedad y se niega a que se le adjudique la propiedad, el contador partidor nunca podría completar su trabajo de dividir los caudales relictos de los CAUSANTES y se perpetuaría el estado de indivisión. Igual que el demandado el contador partidor tendría que acudir al auxilio del Tribunal para poder completar su trabajo.

11. El ejemplo que presentaron las partes en la moción conjunta que radicaron el 11 de noviembre de 2025, Doc.#: 501, para ilustrar al Honorable Tribunal sobre el acuerdo entre las partes para la distribución de los caudales relictos de los CAUSANTES le brinda una idea al demandante de cuánto le correspondería en su día ya que se basa en los estados más recientes, en ese momento, los cuales, nuevamente, el demandante recibe.[23]

12. Ese ejemplo también demuestra que no hace falta un contador partidor ya que las partes están de acuerdo en cómo se deben dividir los caudales relictos de los CAUSANTES.

Evaluada la solicitud de reconsideración instada por instada por el Peticionario, el 1 de diciembre de 2025, el foro primario declaró la misma *No Ha Lugar*.[24]

Aun inconforme, el 18 de diciembre de 2025, el Peticionario incoó el recurso de epígrafe y formuló los siguientes señalamientos de error:

PRIMER ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ORDENARLE A LAS PARTES QUE CONTRATEN A UN CONTABLE QUE FUNJA COMO CONTADOR PARTIDOR POR ACUERDO, PARA QUE REALICE EL CUADERNO PARTICIONAL Y PROCEDA CON LA LIQUIDACIÓN CONFORME CON LO AQUÍ

---

[23] *Id.*, pág. 5. Esta alegación incluye la nota al calce núm. 12 que indica lo siguiente:

12 El ejemplo lo preparó el demandando debido a su preparación académica y experiencia profesional que el demandante nunca ha cuestionado. Así el demandante acepta como correcta. De hecho, en su moción del 13 de noviembre de 2025 titulada, "RESPUESTA A LA MOCION PRESENTADA EN LA ENTRADA#502", Doc.#: 503, el demandante reconoció y aceptó que no hacía falta un contador partidor debido al trabajo que ha realizado y continúa realizando el demandado.

[24] Véase SUMAC TPI, Entrada 524.

RESUELTO Y LO ESTABLECIDO EN EL TESTAMENTO DE RAFAEL RODRÍGUEZ MERCED Y MARÍA JESÚS PARRILLA SÁNCHEZ.

SEGUNDO ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LOS REMEDIOS QUE SOLICITÓ EL PETICIONARIO ANTE LOS ACTOS DEL RECURRIDO, AL APODERARSE DE LA PROPIEDAD, NEGÁNDOSE A QUE LA CORREDORA DE BIENES RAÍCES VENDA LA PROPIEDAD Y HACER LOS PAGOS DEL CRIM Y CUOTA DE MANTENIMIENTO[.]

TERCER ERROR:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECIDIR QUE LE ORDENÓ A LAS PARTES A CONTRATAR UN CONTADOR PARTIDOR YA QUE LAS PARTES RADICARON MOCIONES (SUMAC #502-#505) PARA QUE EL TRIBUNAL LLEVE A CABO ACTOS QUE SON PROPIOS DE UN CONTADOR PARTIDOR.

Por su parte, el 15 de enero de 2026, el Recurrido compareció ante nos mediante escrito intitulado *Oposici[ó]n a Petici[ó]n de Certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales

o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (5) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR__ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd.* Estos criterios son:

    (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

    (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

    (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

    (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

    (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### B. Manejo del Caso

El efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *BPPR v. SLG Gómez-López*, 213 DPR 314, 333-334 (2023) citando a *In re Collazo I*, 159 DPR 141, 150 (2003). Es por ello, que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd.*

Cónsono con lo anterior el Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011). Como regla general, los foros revisores no intervendrán con el manejo del caso ante la consideración del foro primario. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Siendo así, el Tribunal Supremo ha manifestado, que los tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020). El ejercicio adecuado de la discreción judicial se relaciona de manera estrecha con el concepto de razonabilidad. *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021).

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, esta Curia determina que no se han producido las circunstancias que exijan nuestra intervención. Al amparo de los criterios que guían nuestra discreción, no

intervendremos en la determinación recurrida. En el presente caso, el Peticionario no ha demostrado que el foro primario se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

**IV.**

Por los fundamentos antes expuestos, **denegamos** la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones